DENNIS J. KONICKI, Plaintiff-Appellant, *v.* OAK BROOK RACQUET CLUB, INC., Defendant-Appellee.

Second District   No. 82—2

Opinion filed November 8, 1982.—Rehearing denied December 7, 1982.

D. Kendall Griffith and Donald W. Garlinger, both of Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Wheaton, for appellant.

McBride & Baker, of Chicago, for appellee.

JUSTICE NASH delivered the opinion of the court:

Plaintiff, Dennis J. Konicki, appeals from an order of the circuit court of Du Page County dismissing his petition to vacate or modify a decision of an arbitrator following arbitration of a dispute with defendant, Oak Brook Racquet Club, Inc. (OBRC).

The record reflects that Konicki was part owner of the Oak Brook Racquet Club (the Club). In October 1974, OBRC, also a part owner, assumed Konicki's interest in the Club pursuant to a series of agreements which provided, as relevant, that OBRC was to pay certain sums to Konicki over a period of time. Additionally, Konicki entered into a consultation agreement with OBRC which prohibited Konicki from competing with OBRC in its business within "10 square miles" of the Club. All of the executed agreements were included within the terms of a separate arbitration agreement which provided, *inter alia*:

> "Any dispute thereunder shall be determined by arbitration in accordance with rules determined by the arbitrators. The arbitrators shall be one person appointed by Konicki, one person appointed by the President of OBRC and one person appointed by the two said appointees. Notice of demand for arbitration of any issue shall be served on each party, and arrangements shall be made for the orderly conduct thereof by the law firm of McBride, Baker, Wienke & Schlosser. The decision of the arbitrators shall be final and conclusive, except for fraud or gross abuse of discretion. Failure to arbitrate shall preclude judicial actions to resolve disputes arising under the terms of said agreements or this Arbitration Agreement."

Subsequently, in 1976, Konicki participated in the establishment of the Westmont Tennis Club, purportedly within the area of the noncompetition covenant, and OBRC thereafter refused to make any further payments to Konicki under the terms of its agreement with him.

On December 9, 1976, Konicki commenced this action in the circuit court seeking damages from OBRC for its breach of the agreement. OBRC filed a motion to stay proceedings pending the submission of the dispute to arbitration and on August 25, 1978, an agreed order was entered which provided, *inter alia*:

"It is expressly ordered that the interpretation of the contract, the scope and enforceability of the non-competition covenant, are exclusively to be determined by the arbitrator after an evidentiary hearing.

\* \* \*

\*\*\* In the event the arbitrator finds against plaintiff, the hearing will be continued for 30 days on the issue of damages due OBRC as a result of plaintiff's breach, which damages shall be an offset against principal and interest due Konicki under the aforementioned stock redemption agreement and Note."

The arbitrators determined that a valid noncompetition agreement existed between the parties and that the proscribed "10 square miles" referred to an area within a three-mile radius of the Club. The arbitrators further found that Konicki had violated the noncompetition covenant and that OBRC had sustained damage in the amount of $64,000. They also determined that OBRC owed Konicki $102,500 pursuant to the redemption agreement and, accordingly, offset the damages and on August 26, 1980, entered an award in favor of Konicki in the sum of "$48,500 [*sic*]" plus interest.

Within 20 days, OBRC petitioned the arbitrators to correct the mathematical error ($102,500 minus $64,000 equals $38,500, not $48,500) in the award pursuant to section 9 of the Uniform Arbitration Act (UAA). (Ill. Rev. Stat. 1979, ch. 10, par. 109.) On September 29, 1980, the arbitrators modified the award to reflect the correct damage figure of $38,500. Thereafter, on December 24, 1980, Konicki filed a petition to vacate or modify the decision of the arbitrators in the pending circuit court proceeding pursuant to sections 12 and 13 of the UAA. (Ill. Rev. Stat. 1979, ch. 10, pars. 112, 113.) The petition, which was filed within 90 days of entry of the modified award, but more than 90 days after the original award, alleged that the enforcement of the noncompetition clause violated public policy; that the arbitrators ruled upon an issue not submitted to them; and that the award constituted a "gross abuse" of discretion.

OBRC moved to strike the petition contending that it was not timely filed within 90 days of the original award and otherwise failed to state a cognizable basis for review under sections 12 and 13 of the UAA (Ill. Rev. Stat. 1979, ch. 10, pars. 112, 113). OBRC's motion was

granted on these grounds, and Konicki appeals.

Konicki contends that the dismissal of his petition was erroneous, asserting: (1) the section 9 application to the arbitrator to correct the initial award tolled the period in which the parties may petition the circuit court pursuant to sections 12 and 13 of the UAA, thus making his petition timely; (2) public policy considèrations are grounds for review of an arbitrator's award even though not expressly enunciated in sections 12 and 13 of the Act; and (3) the petition otherwise stated a cognizable claim for review under the UAA since it alleged the award was beyond the scope of the submitted issues and constituted a "gross abuse of discretion."

Initially, we note that in considering a motion to dismiss a complaint or petition all well-pleaded facts contained therein must be taken as true and all inferences therefrom must be drawn in favor of the nonmovant. (*Album Graphics, Inc. v. Beatrice Foods Co.* (1980), 87 Ill. App. 3d 338, 344, 408 N.E.2d 1041, 1046; *McCauley v. Chicago Board of Education* (1978), 66 Ill. App. 3d 676, 677, 384 N.E.2d 100, 101, *appeal denied* (1979), 74 Ill. 2d 586.) A petition should not be dismissed for failure to state a claim unless it clearly appears that no set of facts could be proven under the allegations which would entitle the petitioner to relief. *Felbinger & Co. v. Traiforos* (1979), 76 Ill. App. 3d 725, 731, 394 N.E.2d 1283, 1289; *J. J. Harrington & Co. v. Timmerman* (1977), 50 Ill. App. 3d 404, 407, 365 N.E.2d 721, 723.

The threshold issue presented is whether Konicki's section 9 application before the arbitrators tolled the 90-day period in which a party must petition the circuit court for review under sections 12 and 13 until the section 9 application is disposed of by the arbitrators. If the time is not tolled, then Konicki's petition was not timely filed and its dismissal was proper on that ground.

It has been established in Illinois that a party seeking review of an arbitration award must either (1) file a petition in the circuit court within 90 days pursuant to sections 12 and 13 of the UAA; or (2) raise the grounds upon which review is sought in answer to another party's petition to confirm the award under section 11 of the UAA. (*Bloom v. Landy* (1979), 72 Ill. App. 3d 383, 394, 389 N.E.2d 1286, 1295; *Schroud v. Van C. Argiris & Co.* (1979), 78 Ill. App. 3d 1092, 1095, 398 N.E.2d 103, 105, *appeal denied* (1980), 79 Ill. 2d 634.) The mere filing of a petition to confirm an award in the circuit court does not extend the 90-day period in which the other party must raise grounds for its vacation or modification. (*Bloom v. Landy* (1979), 72 Ill. App. 3d 383, 394, 389 N.E.2d 1286, 1295; *Schroud v. Van C. Argiris & Co.* (1979), 78 Ill. App. 3d 1092, 1095, 398 N.E.2d 103, 105,

*appeal denied* (1980), 79 Ill. 2d 634.) However, the effect of a pending section 9 application before the arbitrator upon the period for filing a petition to vacate or modify in the circuit court appears to present an issue of first impression in Illinois.

Section 9 of the UAA provides in pertinent part:

> "On application of a party to the arbitrators \*\*\*, the arbitrators may modify or correct the award upon the grounds stated in paragraphs (1) and (3) of subdivision (a) of Section 13, or for the purpose of clarifying the award. The application shall be made within 20 days after delivery of the award to the applicant. Written notice thereof shall be given forthwith to the opposing party, stating he must serve his objections thereto, if any, within 10 days from the notice. *The award so modified or corrected is subject to the provisions of Sections 11, 12 and 13.*"

(Emphasis added.) (Ill. Rev. Stat. 1979, ch. 10, par. 109.) Although no time limit is specified for filing a petition for confirmation under section 11, a petition to vacate or modify an award under sections 12 or 13 must be made to the circuit court "within 90 days after delivery of a copy of the award to the applicant \*\*\*." Ill. Rev. Stat. 1979, ch. 10, pars. 112(b), 113.

In interpreting a statute, the court is obligated to give the statutory language its plain and ordinary meaning. (*City of East Peoria v. Group Five Development Co.* (1981), 87 Ill. 2d 42, 46, 429 N.E.2d 492, 494; *Potts v. Industrial Com.* (1980), 83 Ill. 2d 48, 51, 413 N.E.2d 1285, 1287.) It would appear that section 9 provides for review of a modified award in the same manner as an original award, and the last sentence of section 9 unambiguously states that a modified or corrected award is subject to the provisions of sections 11, 12 and 13 just as if no section 9 application had been made. We conclude that a party has 90 days from delivery of a modified award in which to petition the circuit court for its review.

Any other interpretation would lead to anomalous and unjust results. For example, the UAA places no time restriction upon the arbitrator's disposition of an application under section 9. Thus, if the time for review is not tolled, a party would effectively lose his statutory right of judicial review if the arbitrators failed to resolve the application within the 90-day period. In order to preserve his right of review a party would then be forced, perhaps needlessly, to apply to the court during the pendency of the section 9 application and before the arbitrator has made a final award. Since the grounds for a section 9 application are included within section 13, the courts would be asked in many cases to simultaneously decide issues still pending be-

fore the arbitrator. We do not think such a duplicative and inexpeditious use of the judicial and arbitration system was contemplated by the enactment of section 9.

Our understanding of these portions of the UAA is supported by decisions interpreting similar provisions in the Workers' Compensation Act. (Ill. Rev Stat. 1979, ch. 48, par. 138.1 *et seq.*) In *International Harvester v. Industrial Com.* (1978), 71 Ill. 2d 180, 374 N.E.2d 182, the court was called upon to determine what effect the pendency of a motion to correct errors pending before the Industrial Commission had upon a party's ability to seek review in the circuit court. The court concluded that before review in the courts can be proper a *"final* determination by the Commission is contemplated." (71 Ill. 2d 180, 185, 374 N.E.2d 182, 184.) It noted:

> "The purpose of section 19(f) is to provide the Commission an opportunity to correct its own clerical or computational errors so as to avoid the necessity of having the circuit court review such errors.
>
> * * *
>
> [J]urisdiction will not attach in the circuit court until the Commission renders its *final* decision. This is so whether the Commission ultimately allows or denies the relief requested in a petition to correct errors." (71 Ill. 2d 180, 186-87, 374 N.E.2d 182, 184-85.)

We believe that section 19(f) of the Workers' Compensation Act and section 9 of the UAA were both intended to afford the nonjudicial forum an opportunity to correct its own errors and reach a final decision prior to judicial review. See also *PPG Industries, Inc. v. Industrial Com.* (1982), 91 Ill. 2d 438, 443, 438 N.E.2d 173, 175; *Simpson v. Industrial Com.* (1982), 91 Ill. 2d 452, 455.

■■ ■ Accordingly, we hold that the filing of an application under section 9 of the UAA before an arbitrator tolls the time for seeking review in the circuit court pursuant to sections 12 and 13 until the petition is finally disposed of by the arbitrator, regardless of whether the relief requested is granted or denied.[1] For this reason, as well as the additional reason, as previously stated herein, that Konicki prop-

---

[1]We are aware that other jurisdictions considering section 9 of the UAA have reached an opposite result. (*Trustees of the Boston & Main Corp. v. Massachusetts Bay Transportation Authority* (1973), 363 Mass. 386, 291 N.E.2d 340; *Cutler Associates, Inc. v. Merrill Trust Co.* (Me. 1978), 395 A.2d 453; *Lopez & Roque Tile Co. v. Clearwater Development Corp.* (Fla. App. 1974), 291 So. 2d 126.) However, two of the rulings (*Trustees* and *Cutler*) were *dicta,* and we find the reasoning underlying the ruling in *Lopez* to be unpersuasive.

erly filed his petition as permitted under the statute within 90 days of receipt of delivery of a modified award from the arbitrator, the dismissal of his petition as untimely was improper.

Next, Konicki contends that the arbitrator's enforcement of the noncompetition clause was violative of public policy and his petition stated a cognizable claim for review on those grounds. OBRC argues that the sole grounds for review of an arbitrator's award are enumerated in sections 12 and 13 of the UAA and, as public policy considerations are not included therein, Konicki's petition failed to state a claim for review and was properly dismissed.

■■ Generally, the scope of judicial review of an arbitrator's decision is limited and extends only to those areas expressly covered by statute. (*Meharry v. Midwestern Gas Transmission Co.* (1981), 103 Ill. App. 3d 144, 146, 430 N.E.2d 1138, 1140; *Pillott v. Allstate Insurance Co.* (1977), 48 Ill. App. 3d 1043, 1047, 363 N.E.2d 460, 463; *American Almond Products Co. v. Consolidated Pecan Sales Co.* (2d Cir. 1944), 144 F.2d 448, 450.) Judicial review is limited because the parties have chosen the forum and must therefore be content with the informalities and possible eccentricities of their choice. (*Garver v. Ferguson* (1979), 76 Ill. 2d 1, 8, 389 N.E.2d 1181, 1184.) However, it is clear that an arbitrator's award may not stand if it results in the contravention of paramount considerations of public policy. (*Board of Trustees v. Cook County College Teachers Union, Local 1600* (1979), 74 Ill. 2d 412, 423-24, 386 N.E.2d 47, 52; *Local P—1236, Amalgamated Meat Cutters v. Jones Dairy Farm* (7th Cir. 1982), 680 F.2d 1142, 1144; *Johns-Manville Sales Corp. v. Machinists Local 1609* (5th Cir. 1980), 621 F.2d 756, 758; Comment, *Judicial Review of Arbitration: The Role of Public Policy*, 58 Nw. U.L. Rev. 545 (1963).) Although such a rule compromises each party's interest in the finality of the award, the Illinois Supreme Court has noted:

"Nevertheless, just as we will not enforce a private agreement which is repugnant to established norms of public policy, we may not ignore the same public policy concerns when they are undermined through the process of arbitration. Even if the arbitrator considered issues of public policy in construing the agreement before him, we may not abdicate to him our responsibility to protect the public interest at stake." *Board of Trustees v. Cook County College Teachers Union, Local 1600* (1979), 74 Ill. 2d 412, 424, 386 N.E.2d 47, 52.

■■ It is well established that noncompetition convenants are not favored in the law and public policy dictates that they will be enforced only if certain stringent criteria are met. (*House of Vision, Inc. v.*

*Hiyane* (1967), 37 Ill. 2d 32, 37, 225 N.E.2d 21, 24; *Egnell, Inc. v. Weniger* (1981), 94 Ill. App. 3d 325, 329, 418 N.E.2d 915, 918.) These criteria include the reasonableness of the chronological and geographical restrictions as well as the existence of a proprietary interest to be protected by the restriction. (*Egnell, Inc. v. Weniger* (1981), 94 Ill. App. 3d 325, 329, 418 N.E.2d 915, 918; *Image Supplies, Inc. v. Hilmert* (1979), 71 Ill. App. 3d 710, 713, 390 N.E.2d 68, 70; *Professional Business Management, Inc. v. Clark* (1967), 83 Ill. App. 2d 236, 242, 227 N.E.2d 371, 374, *appeal denied* (1967), 36 Ill. 2d 630.) If these criteria are not met, the contracts will not be enforced. Although the enforceability of a noncompetition clause is a question of law (*Image Supplies, Inc. v. Hilmert* (1979), 71 Ill. App. 3d 710, 712, 390 N.E.2d 68, 70), the resolution of the question depends upon the underlying relationship of the parties and the proprietary interest involved. We conclude Konicki's petition stated a claim for review of the arbitrator's award as in violation of public policy and its dismissal was also erroneous on this ground.

Konicki further contends that the arbitrator was without authority to determine the amount of interest due Konicki since it was not an issue submitted to arbitration. We do not agree.

■ The arbitration agreement between the parties as well as the agreed order of August 25, 1978, were a part of the record before the trial court. The arbitration agreement must be given as broad an interpretation as its language will allow. (*Security Mutual Casualty Co. v. Harbor Insurance Co.* (1979), 77 Ill. 2d 446, 449-50, 397 N.E.2d 839, 841.) Those portions of the arbitration agreement previously noted state that "any dispute" was to go to arbitration and that the arbitrator was to offset damages against "principal and interest." Konicki's petition fails to allege any facts which would vitiate the unambiguous meaning of this language. Accordingly, the striking of those portions of the petition alleging that the award was beyond the scope of submission was proper.

Finally, Konicki argues that the dismissal of his petition was improper in that under the terms of the arbitration agreement the award is to be final absent "gross abuse of discretion" and that was alleged in the petition.

■ As we have noted, the subject matter jurisdiction of the trial court to review an arbitration award is limited and circumscribed by statute. The parties may not, by agreement or otherwise, expand that limited jurisdiction. (*Hartman v. Hartman* (1980), 89 Ill. App. 3d 969, 971, 412 N.E.2d 711, 713; *Watson v. St. Annes Hospital* (1979), 68 Ill.

App. 3d 1048, 1051, 386 N.E.2d 885, 887, *appeal denied* (1979), 75 Ill. 2d 595; *Talandis Construction Corp. v. Illinois Building Authority* (1978), 60 Ill. App. 3d 715, 718, 377 N.E.2d 237, 240, *appeal denied* (1978), 71 Ill. 2d 615.) Since a claimed "gross abuse of discretion" is not a ground for review under sections 12 and 13 of the UAA, Konicki's petition failed to state a claim for relief on that theory. (*Pillott v. Allstate Insurance Co.* (1977), 48 Ill. App. 3d 1043, 1047, 363 N.E.2d 460, 463.) Accordingly, the striking of that portion of the petition was proper.

In the light of the foregoing the order of the circuit court of Du Page County is affirmed in part, reversed in part and this cause is remanded for further proceedings not inconsistent with this opinion.

Affirmed in part; reversed in part and remanded.

REINHARD and VAN DEUSEN, JJ., concur.