GEORGE D. KARCAZES, Plaintiff-Appellant, v. DIMITRIOS ANTONIOU *et al.*, Defendants-Appellees.

First District (4th Division)   No. 1—87—3273

Opinion filed September 1, 1988.

Donald G. Mulack, of Keck, Mahin & Cate, of Chicago, for appellant.

William J. Gerard and Michael A. Snyder, both of Snyder & Gerard, of Chicago, for appellees.

PRESIDING JUSTICE JIGANTI delivered the opinion of the court:

The plaintiff, George D. Karcazes, appeals from an order of the trial court denying his petition for attorney fees as a sanction against the defendants, Dina Antoniou, Dimitrios Antoniou, Constantine Antoniou and other members of their family, pursuant to former section 2—611 of the Illinois Code of Civil Procedure[1] (Ill. Rev. Stat. 1985, ch. 110, par. 2—611). The petition was based upon allegedly untrue allegations and denials made by the defendants in their answer to a declaratory judgment action filed by Karcazes. The parties eventually submitted the subject matter of the declaratory judgment action to arbitration upon a stipulation of the issues. Following the arbitrators' award to Karcazes, Karcazes filed a section 2—611 petition seeking to recover the costs and attorney fees which he allegedly incurred during the arbitration proceedings in disproving the defendants' untrue pleadings. The trial court denied the petition, finding that Karcazes failed to show that the defendants' allegations and denials were made without reasonable cause and further finding that the parties had agreed to have the entire matter fully resolved through the arbitration process.

Karcazes has appealed, contending that the issue of untrue pleadings was not one of the specific issues submitted to arbitration and that the trial court's determination that the pleadings were made with reasonable cause was against the manifest weight of the evidence.

This litigation arose in November of 1979 when Karcazes, an attorney, filed a declaratory judgment action against the defendants seeking to recover fees in connection with his representation of the defendants in a will contest against the estate of Demos Tingos, the brother of defendant Dina Antoniou. In his complaint, Karcazes alleged, in part, that the defendants signed a retainer agreement on May 9, 1973, providing for a one-third contingency fee; that Karcazes filed a lawsuit to contest the will, a claim against the estate for $85,000 and conducted numerous citations to discover assets; that a

---

[1]Section 2—611 was amended effective November 25, 1986 (Ill. Rev. Stat. 1987, ch. 110, par. 2—611), and is currently much broader in scope than the former version. See *Ignarski v. Heublein* (1988), 171 Ill. App. 3d 830, 525 N.E.2d 995.

settlement agreement was entered into on May 5, 1975, between all of the parties in interest; and that pursuant to the settlement Karcazes received certain specified stock certificates from the executor of the estate for the benefit of the defendants.

The defendants filed an answer containing general denials of the allegations stated above. The answer also raised certain affirmative defenses and stated a counterclaim against Karcazes. In the first affirmative defense, the defendants stated that because they spoke Greek and the retainer agreement was in English, they did not understand the document and Karcazes failed to explain it to them. The defendants' second affirmative defense was that Karcazes misrepresented the nature of the retainer agreement to them. A third affirmative defense stated that Karcazes was engaged in a conflict of interest in representing both Dina and Dimitrios Antoniou and their minor son Constantine Antoniou and that Karcazes failed to disclose the existence of this conflict of interest. Finally, the answer contained a counterclaim alleging that Karcazes had mishandled funds of the estate by failing to deposit them in an interest-bearing account.

Sometime after the date of the settlement agreement, certain stocks held by the estate of Demos Tingos appreciated significantly in value. This caused a dispute between Karcazes and the defendants as to what date should be used for computing the value of estate assets in determining any contingency fee owed to Karcazes.

The parties agreed in October of 1981 to submit the matter of Karcazes' fee to arbitration based upon the following stipulation of issues:

> "(i) Whether the purported retainer agreement drafted by plaintiff, George D. Karcazes, and signed by the defendants, Dina and Dimitrios Antoniou, and Peter Tingos, individually and on behalf of others, is valid in light of the legal and factual circumstances surrounding its execution and in light of the legal and factual circumstances subsequent to its execution.
>
> (ii) If the purported retainer agreement is invalid, whether Plaintiff, George D. Karcazes, is entitled to any fees and, if so, on what basis and in what amount.
>
> (iii) If the purported retainer agreement is found to be valid, whether Plaintiff, George D. Karcazes, is entitled to recover a 'sum of money equal to one-third of any amount realized from said claims' or one-third of all assets recovered, and whether said recovery is subject to set-offs.
>
> (iv) If the purported retainer agreement is found to be valid, whether it is valid as to Dina and/or Dimitrios Antoniou

and/or Constantine Antoniou and/or Peter and Lambrini Tingos.

(v) If the purported retainer agreement is found to be valid as to Dina, Dimitrios and/or Constantine Antoniou and/or Peter and Lambrini Tingos, and Plaintiff, George D. Karcazes, is found to be entitled to a 'sum of money equal to one-third of any amount realized,' whether or not subject to off-sets, what date is to be used to compute the value of the assets recovered: the date of the Settlement Agreement, the present date, or some date in between, and the value of the assets on the date to be used to compute value.

(vi) Whether defendants' alleged refusal to agree to the claims of plaintiff was vexatious and without justification, and therefore constituted a breach of the agreement.

(vii) Whether plaintiff or defendants are entitled to the payment of interest (or other damages) by the other.

The issues may be simplified as follows:

1. Whether plaintiff, attorney George D. Karcazes, is entitled to any fees and if so, on what basis and in what amount?

2. Whether plaintiff or defendants are entitled to the payment of interest (or other damages) by the other?"

Arbitration hearings were held and on April 27, 1984, the arbitrators issued a preliminary order setting forth the following findings:

"1. The retainer agreement in question is a valid and enforceable contract as to all parties.

2. GEORGE D. KARCAZES is entitled to a sum of money equal to 1/3 of any amount realized from the settlement agreement in question, dated May 5, 1975.

3. The value of all non-cash assets, realized from the settlement agreement, shall be valued as of the date of that agreement, May 5, 1975.

4. No party has been guilty of bad faith.

5. No party is entitled to recover any interest or damage on the basis of vexatious delay or bad faith."

On June 13, 1984, the arbitrators issued an order affirming the preliminary order and awarding Karcazes a total of $62,475.01 in attorney fees. The award was confirmed by the circuit court on June 14, 1984.

On November 27, 1984, Karcazes filed a petition in the circuit court seeking to recover from the defendants the attorney fees he incurred during the arbitration process as a sanction under former section 2—611 of the Code of Civil Procedure. (Ill. Rev. Stat. 1985, ch.

110, par. 2—611.) At that time, section 2—611 provided that "[a]llegations and denials, made without reasonable cause and found to be untrue, shall subject the party pleading them to the payment of reasonable expenses, actually incurred by the other party by reason of the untrue pleading, together with a reasonable attorney's fee ***." (Ill. Rev. Stat. 1985, ch. 110, par. 2—611.) According to Karcazes, the untrue pleadings were: the defendants' denial that they entered into a retainer agreement; the defendants' denial that Karcazes filed a suit to contest the will and a claim against the estate and that he conducted numerous citations to discover assets; the denial that a settlement agreement had been effectuated; and the denial that Karcazes had received certain specified stock certificates from the executor of the estate. Also alleged as untrue were the defendants' affirmative defenses that Karcazes did not explain the retainer agreement to the defendants, that he misrepresented the nature of the agreement to them and that he failed to disclose the existence of a possible conflict of interest. Finally, the section 2—611 petition stated that the defendants' counterclaim alleging that Karcazes mishandled funds was untrue.

At a trial on the section 2—611 petition held between February 1, 1985, and September 30, 1986, Karcazes introduced evidence in an effort to prove that the pleadings in question were untrue and made without reasonable cause. On the existence of the retainer agreement Karcazes introduced deposition testimony in which both Dina and Dimitrios Antoniou admitted signing the agreement. The defendants' attorney also admitted that he saw the retainer agreement prior to preparing the defendants' answer. With respect to the services performed by Karcazes, Dina Antoniou admitted that a suit to contest the will had been filed and the parties stipulated that a claim for $85,000 had been filed against the estate. Additionally, Dina Antoniou testified that she had attended many depositions in Karcazes' office and the defendants' attorney testified that he was aware prior to filing the answer that citation proceedings had been conducted. The existence of a settlement agreement was acknowledged by Dina Antoniou at the section 2—611 proceeding and by Dimitrios Antoniou in an earlier deposition. With respect to the defendants' denial that Karcazes received certain stock certificates pursuant to the settlement agreement, Dina Antoniou admitted that she received a letter from Karcazes confirming that she had seen the certificates in his office.

As to the untrue nature of the first affirmative defense, Karcazes testified that he spoke fluent Greek and explained the provisions of the retainer agreement to the defendants. He further testified that

the defendants took a draft of the agreement to another Greek-speaking attorney for review prior to signing it. The defendants' attorney stated in a deposition that the defendants told him that Karcazes had explained the agreement to them in Greek. The defendants did not testify as to any basis for their affirmative defense of misrepresentation. The allegations regarding a possible conflict of interest were not advanced by Karcazes at the section 2—611 proceeding as a basis for the imposition of sanctions.

With respect to the defendants' counterclaim against Karcazes alleging mishandling of funds, the evidence showed that Karcazes made several attempts over a five-year period to persuade the defendants to endorse the checks received from the executor of the estate and held by Karcazes so that the funds could be deposited into an interest-bearing account. The defendants refused on the basis that such action would "dilute their position" and cause them to lose control of the funds.

The defendants' position at the section 2—611 proceeding was that when the matter of Karcazes' fee was submitted to arbitration on stipulated issues, the pleadings were abandoned and could therefore not have caused Karcazes to incur any attorney fees in attempting to disprove them. In support of this position the defendants introduced the testimony of John Pendergast, one of the arbitrators, who stated that although the pleadings were introduced into evidence, the arbitrators' decision was based upon the stipulation of issues submitted by the parties. Pendergast did testify, however, that in order to determine the validity of the retainer agreement, the arbitrators had to decide "whether or not [the defendants] knew what they were signing" and that this issue concerned the defendants' language difficulties and whether the agreement was explained to them. Also, Pendergast testified that in determining whether the defendants were entitled to interest, the arbitrators had to decide whether Karcazes had mishandled funds by failing to deposit them.

At the conclusion of the proceeding, the trial court found first, that Karcazes failed to prove that the pleadings in question were made without reasonable cause and, second, that the parties had agreed to have the entire matter of Karcazes' fee "fully resolved through the arbitration process." The section 2—611 petition was accordingly denied.

Karcazes raises two contentions on appeal. First, he maintains that the trial court erred in finding that the matter of untrue pleadings as raised in the section 2—611 petition came within the ambit of the issues submitted to the arbitrators. Second, he argues that the

trial court's finding that the pleadings were made with reasonable cause was against the manifest weight of the evidence. Our disposition of the first contention makes it unnecessary for us to address the second.

■ It is well established that parties are bound to arbitrate only those issues which by clear language they have agreed to arbitrate and that arbitration agreements will not be extended by implication or construction. (*Flood v. Country Mutual Insurance Co.* (1968), 41 Ill. 2d 91, 94, 242 N.E.2d 149.) It is equally well established, however, that an arbitration agreement must be given as broad an interpretation as its language will allow. (*Konicki v. Oak Brook Racquet Club, Inc.* (1982), 110 Ill. App. 3d 217, 224, 441 N.E.2d 1333; see also *Roosevelt University v. Mayfair Construction Co.* (1975), 28 Ill. App. 3d 1045, 331 N.E.2d 835 (for a discussion of the distinction between specific and generic arbitration provisions).) Arbitration is favored in law because its purpose is "to foster the final disposition of disputes in an easier, quicker, and more economical manner than by litigation." (*Kalish v. Illinois Education Association* (1988), 166 Ill. App. 3d 406, 410, 519 N.E.2d 1031, 1033.) Where a specific issue is submitted to arbitration, the parties must raise all matters pertaining to that issue in the arbitration proceeding. (*Schutt v. Allstate Insurance Co.* (1985), 135 Ill. App. 3d 136, 144, 478 N.E.2d 644; *Cole v. Inland National Insurance Co.* (1971), 133 Ill. App. 2d 745, 748, 273 N.E.2d 65.) The parties may not subvert the arbitration process by failing to raise a matter which falls within the ambit of the issues submitted, then later asking the court to determine the matter in a subsequent proceeding. *Schutt v. Allstate*, 135 Ill. App. 3d 136, 478 N.E.2d 644.

■ In the case at bar, the parties agreed to submit seven separate issues, quoted earlier in this opinion, to the arbitrators. The first six issues are specific in nature and concern for the most part the validity of the retainer agreement, the percentage of the contingency fee agreed upon by the parties and the date to be used in valuing the estate assets for purposes of computing Karcazes' fee. The seventh issue, however, is broadly worded, stating "[w]hether plaintiff or defendants are entitled to the payment of interest (or other damages) by the other." In our view, the last issue concerning "other damages" is properly interpreted as an expression of the parties' intent to effect an all-encompassing end to this protracted litigation. We find significant in this regard the fact that although this litigation was initiated by Karcazes to obtain his fees, the arbitrators were asked to determine not only the amounts owed to Karcazes by the defendants, but also any interest or damages which Karcazes might owe to the

defendants. Thus, we believe that the costs and attorney fees requested by Karcazes in his section 2—611 petition fall within the definition of "other damages" as stated in the seventh issue submitted to arbitration. Having agreed to submit the issue of damages to arbitration, Karcazes was required to raise all matters, including the defendants' alleged violation of section 2—611, which came within the ambit of that issue. The trial court properly determined that Karcazes' failure to do so precluded him from asking the court to determine the matter in a subsequent proceeding.

Accordingly, the judgment of the circuit court is affirmed.

Affirmed.

JOHNSON and McMORROW, JJ., concur.