June 23, 1997

No. 1-96-0358

Cons. 1-96-2757 

CHICAGO SOUTHSHORE and ) APPEAL FROM THE 

SOUTH BEND RAILROAD, ) CIRCUIT COURT OF 

) COOK COUNTY

Petitioner-Appellee, )

)

v. ) No. 94 CH 9719

)

NORTHERN INDIANA COMMUTER ) 

TRANSPORTATION DISTRICT, ) THE HONORABLE

) AARON J. JAFFE

Respondent-Appellant. ) JUDGE PRESIDING.

PRESIDING JUSTICE COUSINS delivered the opinion of the court:

The Chicago SouthShore and South Bend Railroad (SouthShore) initiated the instant action in Illinois, seeking confirmation of an arbitration award entered on August 11, 1994. The Northern Indiana Commuter Transportation District (NICTD) filed suit in Indiana seeking review of the arbitration award.  SouthShore petitioned the Illinois trial court to confirm the award.  NICTD contested the jurisdiction of the Illinois courts.  The Illinois trial court denied NICTD's jurisdictional argument and confirmed the award.  NICTD appealed.  NICTD subsequently moved the Illinois trial court to vacate its judgment confirming the award.  The trial court denied NICTD's motion to modify or vacate the judgment confirming the award.  NICTD again filed an appeal.  The two appeals have been consolidated.  On appeal, NICTD contends that the Illinois courts: (1) did not have subject matter jurisdiction to review the arbitration award; (2) should not have exercised jurisdiction over NICTD under the principles of comity; (3) erred in refusing to enforce the arbitration contract between the parties as written; and (4) erred in refusing to allow NICTD a full and fair hearing on the merits of its claim and in failing to grant NICTD's petition to vacate judgment.

BACKGROUND

NICTD is an Indiana State Transportation District created pursuant to Indiana statute (Ind. Code §8-5-15-1 
et seq.
 (1992)).  SouthShore is an Indiana partnership.  On September 27, 1989, SouthShore and NICTD entered into a contract that governed the purchase of the assets of the bankrupt old South Shore Railroad and the subsequent operation of rail freight and passenger services over the line purchased.  Pursuant to the contract, NICTD was to operate the passenger service while SouthShore would run the freight operation.  

Section 16.7 of the contract provided for the method by which disputes were to be resolved by the parties.  Specifically, section 16.7 of the contract provided, in relevant part:

"If any dispute remains unresolved 30 days after 

notice of the existence of a dispute as delivered by one 

party to the other, either party, may, thereafter, submit 

the matter to arbitration in accordance with the provisions of this paragraph.  In the event a dispute is submitted to   arbitration under the terms of this Agreement, SSA (SouthShore) and NICTD each shall appoint one arbitrator and those two arbitrators shall select a third arbitrator. The 

decision of the majority of the three parties shall be final and conclusive between the parties, except that if either party claims that the arbitrator's decision is based upon an error of law, it may, within 30 days after receipt of such decision, institute an action at law within the State of Indiana to determine such legal issue.  All arbitration proceedings shall take place within the State of Indiana and shall be governed by the rules of the American 

Arbitration Association."

Section 16.8 provides:

"This Agreement is to be interpreted pursuant to the laws of the State of Indiana."

The last relevant provision is section 16.9, which provides:

"It is intended that the subject matter hereof shall be embodied in definitive agreements to be prepared and executed by the parties subsequent to the date hereof.   However, pending execution of such definitive agreements, this Agreement shall be deemed binding and enforceable and shall reflect the entire agreement of the parties with respect to the subject matter hereof, superseding any prior agreements or understandings."

During 1992, a dispute arose between NICTD and SouthShore concerning the interpretation of certain provisions contained within the contract.  The parties were unable to resolve that dispute; therefore, NICTD invoked the arbitration provisions in the contract during 1993.  All three appointed arbitrators were attorneys practicing in Chicago, Illinois.  Also, SouthShore's attorney practices in Chicago.  For the convenience of the arbitrators, NICTD agreed to allow the arbitration hearing to proceed in Chicago.  The agreement to arbitrate in Chicago was reached before the arbitrators in a pre-arbitration memorandum.  The arbitration hearings were held in Chicago on July 11-15 and August 2-3, 1994.  The award was issued on August 11, 1994.

NICTD challenged the portion of the award dealing with the maintenance of way (MOW) fee by filing a complaint for declaratory judgment in Indiana on September 9, 1994.  On February 22, 1995, the Indiana trial court found that, because the arbitration hearings took place in Illinois, Indiana courts lacked subject matter jurisdiction to hear NICTD's complaint for declaratory judgment.  The Indiana trial court, therefore, dismissed NICTD's complaint for declaratory judgment action.  

On October 28, 1994, SouthShore filed a motion for confirmation of the arbitration award in the Illinois trial court.  In response, NICTD filed a special and limited appearance and contested the Illinois court's subject matter jurisdiction over the dispute and also contended that, under the principles of comity, the Illinois court should decline to exercise jurisdiction over NICTD.  

On March 14, 1995, the Illinois trial court entered its order, determining that Illinois courts did have jurisdiction to review and confirm the arbitrator's award because Illinois was the situs of the arbitration hearings.  The court based its decision on the Indiana trial court's finding that Indiana lacked subject matter jurisdiction to hear NICTD's petition for review of the arbitrator's purported errors.

On April 12, 1995, NICTD filed a motion to modify or vacate the arbitration award in the Illinois trial court.  On September 6, 1995, the trial court entered an order striking, as untimely, NICTD's motion to modify or vacate the arbitration award. On October 30, 1995, NICTD was granted leave to file its response brief to SouthShore's motion to confirm the arbitration award.  The response asked the trial court, 
inter alia
, to stay any confirmation of the arbitrator's award pending a complete adjudication of the complaint for declaratory judgment, which was then before the Indiana Court of Appeals.  In the alternative, NICTD sought a hearing as to that portion of the arbitrator's award dealing with the MOW fee.  On November 6, 1995, the Illinois trial court refused to stay the proceedings or to allow a hearing on the MOW fee.  The court entered its judgment confirming the arbitration award on December 20, 1995.  NICTD filed a notice of appeal from this judgment.

Subsequent to the Illinois trial court's entry of judgment, the Indiana Court of Appeals reversed the Indiana trial court and held that Indiana courts did have subject matter jurisdiction and that, under Indiana law, the arbitrator's decision should have been reviewed by the Indiana courts.  Based on the Indiana Court of Appeals decision, NICTD filed a petition to vacate or modify the Illinois trial court's December 20, 1995, order. The Illinois trial court denied the petition on July 24, 1996.  NICTD then filed a second notice of appeal.  Both appeals have been consolidated.

ANALYSIS

I

NICTD first contends that the Illinois court lacked subject matter jurisdiction to confirm the underlying arbitration award.  SouthShore argues that the Illinois court has jurisdiction under the Illinois Uniform Arbitration Act (the Act) 710 ILCS 5/1 
et seq
.
 (West 1992)).  

Subject matter jurisdiction gives the right to hear and determine causes.  
Fredman Brothers Furniture Co. v. Department of Revenue
, 109 Ill. 2d 202, 215, 486 N.E.2d 893 (1985).  The subject matter jurisdiction of the trial court to review an arbitration award is limited and circumscribed by statute.  The parties may not, by agreement or otherwise, expand that limited jurisdiction.  
Konicki v. Oak Brook Racquet Club, Inc.
, 110 Ill. App. 3d 217, 224, 441 N.E.2d 1333 (1982).  Judicial review is limited because the parties have chosen the forum and must therefore be content with the informalities and possible eccentricities of their choice.  
Konicki
, 110 Ill. App. 3d at 223.  

Specifically, NICTD argues that Illinois did not have jurisdiction to confirm the award because the arbitration agreement explicitly sets forth:

"If either party claims that the arbitrator's decision is based upon an error of law, it may, within 30 days after receipt of such decision, institute an action at law within the State of Indiana to determine such legal issue.  All arbitration proceedings shall take place within the State of Indiana and shall be governed by the rules of the American Arbitration Association.

 * * *

This agreement is to be interpreted pursuant to the laws of the State of Indiana.

* * *

It is intended that the subject matter hereof shall be embodied in definitive agreements to be prepared and executed by the parties subsequent to the date hereof.   However, pending execution of such definitive agreements, this Agreement shall be deemed biding and enforceable and shall reflect the entire agreement of the parties with respect to the subject matter hereof, superseding any prior agreements or understandings." 

NICTD asserts that, based on the above provisions, the parties clearly intended that any judicial proceedings ancillary to the arbitration process be brought in the State of Indiana.   

SouthShore contends that, because section 17 of the Act provides that any application to court "shall be made to the court of the county in which the agreement provides the arbitration hearing shall be held or, if the hearing has been held, in the county in which it was held" (710 ILCS 5/17 (West 1992), jurisdiction to enforce and enter judgment on the award arose in Illinois, the situs of the arbitration. SouthShore refers to section 1 of the Act, which requires that the Act be construed so as "to effectuate its general purpose to make uniform the law of those states which enact it."  710 ILCS 5/20 (West 1992).  Southshore also refers to section 16 of the Act, which provides:

"The term 'court' means any circuit court of this State. The making of an agreement described in Section 1 providing for arbitration in this State confers jurisdiction on the court to enforce the agreement under this Act and to enter judgment on an award thereunder."  710 ILCS 5/16 (West 1992).

SouthShore asserts that the parties' agreement to arbitrate in Illinois expressed the parties' intent under the Act to have the agreement enforced in Illinois.  SouthShore relies on 
Kress Corp. v. Edw. C. Levy Co.
, 102 Ill. App. 3d 264, 430 N.E.2d 593 (1981), to support its argument. In 
Kress
, the parties agreed to arbitrate in Peoria, Illinois. Kress filed an action in Peoria, Illinois, to confirm the award, which the court affirmed.  On appeal, Levy argued that the Federal Arbitration Act (9 U.S.C. §1 
et seq
. (1976)), rather than the Illinois Uniform Arbitration Act, governed because the transaction between the parties involved interstate commerce.  The court held that, although the underlying contract did not explicitly answer this question, both the conduct of the parties in petitioning for confirmation and moving to dismiss pursuant to the Illinois Uniform Arbitration Act, and the express agreement to arbitrate in the State of Illinois, implied that the parties agreed to submit their dispute to the law of Illinois as it applied to arbitration.  
Kress
, 102 Ill. App. 3d at 268.

SouthShore also relies on the Missouri Court of Appeals case of 
State ex rel. Tri-City Construction Co. v. Marsh
, 668 S.W. 2d 148 (Mo. App. 1984), to support its argument. In 
Tri-City
, the arbitration agreement called for the application of the Kansas Uniform Arbitration Act, but did not specify the location for arbitration.  The court held that, because the arbitration was conducted in Missouri, only the Missouri courts had jurisdiction to confirm the arbitration award.  
Tri-City
, 668 S.W.2d at 152. 

We note that the Indiana Court of Appeals 
(footnote: 1)[fn1] agreed with NICTD, holding that, where the parties have entered into an agreement, that agreement, and not the place of arbitration, controls the determination of which state has jurisdiction over an appeal of an arbitration decision.  The court reasoned that, had the parties intended to change the agreement to confer jurisdiction in Illinois, the parties would have executed an amendment to the agreement.  The court further stated that, although NICTD agreed to waive the situs of the arbitration, this waiver did not alter or nullify the provisions in the parties' agreement that conferred subject matter jurisdiction on the courts of Indiana.

We disagree.  An arbitration agreement is construed in the same manner as any other agreement.  
Schroud v. Van C. Argiris & Co.
, 78 Ill. App. 3d 1092, 1096, 398 N.E.2d 103 (1979).  An agreement must be construed according to the language of the agreement.  
Schroud
, 78 Ill. App. 3d at 1096.  A contractual right with respect to arbitration can be waived as can any other contract right.  
Ure v. Wangler Construction Co
.
, 232 Ill. App. 3d 492, 498, 597 N.E.2d 759 (1992).  Waiver of a contract term may occur when a party conducts itself in a manner that is inconsistent with the subject clause, thereby indicating an abandonment of its contractual right.  
Ure
, 232 Ill. App. 3d at 498-99.

We believe that, in the instant case, the statutory language of the Uniform Arbitration Act, as well as the circumstances surrounding the arbitration and the confirmation of the award, determines jurisdiction of the award.  The parties initially agreed that the arbitration would take place in Indiana and Indiana law would govern the parties' contract. Subsequently, the parties agreed during a preliminary arbitration hearing that the arbitration would take place in Illinois.  NICTD filed its complaint for declaratory judgment in Indiana on September 9, 1994. On October 28, 1994, SouthShore petitioned for confirmation of the arbitration award in Illinois.  The Indiana trial court dismissed NICTD's complaint on February 22, 1995, stating that, because the arbitration hearings took place in Illinois, Indiana courts lacked subject matter jurisdiction to hear NICTD's complaint.  On March 14, 1995, the Illinois trial court entered its order, finding that Illinois courts had jurisdiction to review and confirm the award.  The Indiana appellate court did not issue its initial decision holding that Indiana had jurisdiction until February 20, 1996.  Thus, there was no binding decision by the Indiana court regarding jurisdiction of the award at the time that SouthShore petitioned for the confirmation award. If the Illinois court had not accepted jurisdiction, SouthShore would then have had no forum for enforcing the arbitration award. Furthermore, as noted in 
Tri-City
, "the place of contracting is not always, or even frequently, the convenient location for the arbitration.  Modern business operates in a multistate environment, and the parties should be permitted to choose the place of arbitration and confirmation upon consideration of convenience, and not upon artificial concepts of the place of contracting."  
Tri-City
, 668 S.W.2d at 152.  Based upon the statutory language of the Act, the Act's direction to construe the Act uniformly, and the "common sense application of the Act to meet the needs of the parties" (
Tri-City Construction Co.
, 668 S.W.2d at 152), we hold that the trial court did not err in finding that Illinois had jurisdiction of the arbitration award.  

II

NICTD next contends that it is an Indiana state agency and, therefore, Illinois courts should decline to exercise jurisdiction over it based on comity and sovereign immunity.  The Office of the Attorney General for the State of Indiana also argues, as 
amicus curiae
, that principles of sovereign immunity preclude suit against NICTD in an Illinois forum.  SouthShore argues that neither statute nor common law provides NICTD with sovereign immunity. 

 The State of Indiana no longer strictly adheres to the doctrine of sovereign immunity and is, therefore, not immune from liability in a state court proceeding for damages resulting from the exercise of its proprietary or governmental functions.  
Burr v. Duckworth
, 547 F. Supp. 192, 195 (N.D. Ind. 1982), 
aff'd
, 746 F.2d 1482 (7th Cir. 1984).  NICTD asserts, however, that, as a state agency, it is immune from suits outside the state of Indiana, unless it consents thereto.  Article 4, section 24, of the Constitution of the State of Indiana provides as follows:

"Provision may be made, by general law, for bringing 

suit against the State; but no special law authorizing such suit to be brought, or making compensation to any person claiming damages against the State, shall ever be passed." Ind. Const. art. IV, §24.

We do not believe that this provision controls the case 
sub judice
.  The Uniform Arbitration Act explicitly provides that "[u]pon application of a party, 
the court shall confirm
 an award."  (Emphasis added.) 710 ILCS 5/11 (West 1992). NICTD agreed to submit to arbitration in the event of any disputes between it and SouthShore. Therefore, NICTD agreed to sue and be sued in court by virtue of the arbitration agreement, which incorporates the requirements of the Uniform Arbitration Act.      

III

NICTD also contends that the Illinois court's refusal to recognize NICTD's right to commence the action in the State of Indiana and its refusal to recognize its right to complete the dispute resolution process in Indiana provided for in the contract, violated the full faith and credit clause of the United States Constitution.  U.S. Const., art. IV, §1.  

The full faith and credit clause requires each state to give effect to official acts of other states; a judgment entered in one state must be respected in another provided that the first state had jurisdiction over the parties and the subject matter.  
Nevada v. Hall
, 440 U.S. 410, 59 L. Ed. 2d 416, 99 S. Ct. 1182 (1979).  However, a state's recognition of another state's laws or judicial decisions is based on state policy, rather than a constitutional command.  
Hall
, 440 U.S. 410, 59 L. Ed. 2d 416, 99 S. Ct. 1182.  Also, the doctrine that no sovereign may be sued in its own courts without its consent affords no support for a claim of immunity in another sovereign's courts.  
Hall
, 440 U.S. at 416, 59 L. Ed. 2d at 422, 99 S. Ct. at 1186.

In the instant case, both Indiana and Illinois claim jurisdiction over the arbitration award.  However, we believe that Illinois had jurisdiction.  Also, significantly, the decision of the Illinois court to confirm the arbitration award was not in derogation of any decision then existing by the Indiana court. Therefore, we do not believe that the decision of the Illinois court to confirm the award has abridged the full faith and credit clause of the United States Constitution.

IV

NICTD further argues that, even if jurisdiction properly lay in the Illinois courts, the Illinois trial court erred in refusing to consider NICTD's substantive arguments in its motion to modify or vacate the arbitration award. SouthShore argues that NICTD failed to seek timely relief in the Illinois trial court.  The trial court refused to consider NICTD's substantive arguments because they were not raised in the Illinois court within 90 days of the entry of the arbitrator's award.

Section 12 of the Uniform Arbitration Act permits a party to petition the circuit court to vacate the arbitrator's award, as long as the petition is filed within 90 days after delivery of a copy of the award to the petitioner; if the petition is based upon fraud, it must be filed 90 days from the date the fraud was known or should have been known. 710 ILCS 5/12 (West 1992).  The mere filing of a petition to confirm the award in the circuit court by the opposing party does not extend the 90-day period within which a request for vacatur must be presented; thus, if grounds to vacate are raised in response to a petition to confirm, they are timely only if asserted within the 90-day period.  
Hough v. Howington
, 254 Ill. App. 3d 452, 456-57, 627 N.E.2d 36 (1993); 
Konicki
, 110 Ill. App. 3d at 220-21.

 In the instant case, the arbitration award was issued on August 11, 1994.  NICTD filed its complaint for declaratory judgment and other appropriate  relief in the Indiana trial court on September 9, 1994.  On October 28, 1994, SouthShore filed its petition in Illinois to confirm the award; however, NICTD chose not to enforce its rights under the Act to seek to vacate the award.  Instead, NICTD filed a special and limited appearance to contest the jurisdiction of the Illinois trial court.  After losing its jurisdictional challenge, NICTD, on April 12, 1995, filed a motion to modify or vacate the arbitration award in Illinois.  On September 6, 1995, the trial court entered an order striking, as untimely, NICTD's motion to modify or vacate the arbitration award.  In entering that order, the trial court concluded that NICTD had "adopt[ed] a flawed strategy" by choosing only to contest jurisdiction and that NICTD should also have answered and raised defenses to SouthShore's motion to confirm within the statutory period.  

NICTD argues that, because it commenced its action in a court of competent jurisdiction, principles of fundamental fairness require that NICTD receive a hearing on the merits of its complaint whether it was instituted in Indiana or Illinois.  NICTD relies on 
Hourly Messengers, Inc. v. Insurance Co. of North America
, 163 N.J. Super. 276, 394 A.2d 880 (1978).  In 
Hourly Messengers
, at issue was whether the plaintiff's action was barred by the 12-month contractual period of limitation.  The plaintiff had initially filed suit against an insurer in May 1969, in Pennsylvania.  The plaintiff filed a similar suit in New Jersey on May 28, 1971.  Subsequently, the first suit was voluntarily dismissed by the plaintiff.  The New Jersey appellate court held that the limitations period was not implicated because the timely action in Pennsylvania was pending and not discontinued until after the second complaint was filed in New Jersey.  The court noted that the insured had notice in the first action of the claim and the second, overlapping action did not advance a distinctly new or different claim.  Consequently, the reasons for applying the contractual period of limitations did not exist and the complaint should not have been dismissed.  
Hourly Messengers
, 163 N.J. Super at 280, 394 A.2d at 882.

NICTD also relies on 
Cook v. Britt
, 8 Ill. App. 3d 674, 290 N.E.2d 908 (1972).  In 
Cook
, a Georgia plaintiff effected substitute service of process on an Illinois resident pursuant to Georgia statute.  The statute was later determined to be unconstitutional and the Georgia action was dismissed.  The Georgia plaintiff filed in Illinois after the statute of limitations had run but within a year of the dismissal.  The court allowed the Georgia plaintiff to proceed because Georgia had jurisdiction over the matter and the service statute was presumptively valid at the time.  
Cook
, 8 Ill. App. 3d at 679.

We acknowledge that, for purposes of comity and the full faith and credit clause, an argument can be made that, because NICTD filed a timely motion for declaratory relief in Indiana, the Illinois court should have allowed NICTD to proceed on its motion to vacate or modify the award.  However, we do not believe that 
Cook
 and 
Hourly Messengers
 are apposite to the case 
sub judice
.  Here, unlike 
Hourly Messengers
 and 
Cook
, the complaint filed by NICTD for declaratory judgment in Indiana was dismissed by the Indiana trial court on February 22, 1995, for lack of subject matter jurisdiction.  SouthShore, on October 28, 1994, filed a motion for confirmation of the arbitration award in the Illinois trial court.  NICTD then filed a special and limited appearance in Illinois contesting the Illinois court's subject matter jurisdiction.  On March 14, 1995, the Illinois trial court entered an order determining that Illinois did have jurisdiction.  In our view, the Illinois trial court did not err. Significantly, the March 14, 1995, decision of the Illinois trial court was in conformity with the February 22, 1995, decision of the Indiana trial court.  Illinois had jurisdiction at the time that NICTD filed its motion in Indiana and at the time that SouthShore sought to confirm the award in Illinois.  NICTD chose not to present its motion to vacate the arbitrator's award at the time SouthShore filed its motion to confirm the award. When NICTD, on April 12, 1995, filed its motion to modify and vacate the arbitration award in Illinois, more than 90 days had elapsed from the time the arbitrators issued the award. See 
Konicki
, 110 Ill. App. 3d at 220-21; 
Hough
, 254 Ill. App. 3d at 456-57. Accordingly, NICTD's petition was barred pursuant to section 12 of the Uniform Arbitration Act. 710 ILCS 5/12 (West 1992).

     For the reasons cited herein, the judgment of the circuit court of Cook County is affirmed.

Affirmed. 

GORDON and LEAVITT, JJ., concur. 

[fn1] On March 11, 1997, the Indiana Supreme Court issued a transfer order regarding the Indiana case (Northern Indiana Commuter Transportation District v. Chicago SouthShore and South Bend Railroad, No. 46S03-9703-CV-00191).  Under the rules of the Indiana Supreme Court, when a transfer order is entered, the appellate court decision is vacated and becomes nonprecedential.

 

FOOTNOTES
1:
On March 11, 1997, the Indiana Supreme Court issued a transfer order regarding the Indiana case (Northern Indiana Commuter Transportation District v. Chicago SouthShore and South Bend Railroad, No. 46S03-9703-CV-00191).  Under the rules of the Indiana Supreme Court, when a transfer order is entered, the appellate court decision is vacated and becomes nonprecedential.