858 A.2d 508

Alexander J. MANDL

v.

Sue BAILEY.

No. 1055 Sept. Term, 2003.

Court of Special Appeals of Maryland.

Sept. 30, 2004.

66

68

C. Allen Foster (Joe R. Reeder, David Panzer, Geoffrey J. Greeves, Greenberg Traurig, LLP on the brief), Washington, DC, for appellant.

Stanley J. Reed (J. Bradford McCullough, Deborah E. Reiser, Lerch, Early & Brewer, Chartered on the brief), Bethesda, for appellee.

Argued before SALMON, DEBORAH S. EYLER, SHARER, JJ.

DEBORAH S. EYLER, Judge.

In the Circuit Court for Montgomery County, Sue Bailey, M.D., the appellee, filed a three-count petition to vacate an original arbitration award and a modified arbitration award issued in her contractual dispute with her ex-husband Alexander J. Mandl, the appellant. She alleged that the awards were procured by fraud (count I); that the Arbitrator had refused to hear evidence material to the parties' controversy (count II); and that the Arbitrator had exceeded his authority in modifying a part of the original award (count III).

Mandl moved to dismiss the petition on several grounds, including that it was not timely filed. Bailey moved for partial summary judgment on count II. After a hearing, the court granted Bailey's motion, denied Mandl's motion to dismiss, and dismissed counts I and III for mootness. In a written order memorializing that ruling, the court vacated the Arbitrator's award and remanded the matter to the Arbitrator for further proceedings.

On appeal, Mandl raises several questions for review, which we have combined and restated as follows:

I. Was the circuit court's decision to grant summary judgment in favor of Bailey on count II of the petition to vacate arbitration award legally incorrect?

II. Was the circuit court's decision to deny Mandl's motion to dismiss legally incorrect?

III. If the circuit court did not err in granting summary judgment on count II of the petition to vacate arbitration award, and in denying the motion to dismiss, was its decision about the scope of the remand to the Arbitrator legally incorrect [1]?

On Question I, we conclude that the circuit court's decision that the Arbitrator refused to hear evidence pertinent to the parties' dispute was legally incorrect. On Question II, we conclude that the circuit court correctly denied Mandl's motion to dismiss in part. We shall vacate the circuit court's dismissal order as to count I and remand for further proceedings on that count; vacate the court's summary judgment order as to count II and remand with instructions to the court to enter summary judgment in favor of Mandl on that count; and affirm its dismissal order as to count III. Our disposition of Question I resolves Question III without the need for further discussion.

---

1. The issues as stated by Mandl in his brief are:
"I. Whether the circuit court erred in concluding that the June 27, 2002 award was not final?
II. Whether the circuit court erred by not deferring to the determination of the AAA that the arbitrator had no authority to reopen the hearing under the AAA rules?
III. Whether the circuit court erred in finding that, by requesting reconsideration of the alimony arrearage calculation, Mr. Mandl waived the issue of reopener?
IV. Whether the circuit court erred in denying Mr. Mandl's motion to dismiss Count I of the petition as untimely?
V. Whether the circuit court erred on the scope of the remand to the arbitrator?"

## FACTS AND PROCEEDINGS

### Background

The parties were married on April 21, 1991, when they both were 48 years old. Each had been married previously and had children from those marriages.[2] The parties' marriage did not produce any children. They separated on September 15, 1996.

The parties are highly accomplished in their respective fields. Bailey is a medical doctor. During some of the marriage, she held high-ranking positions with the federal government; otherwise, she maintained a successful private practice. She is a sought-after motivational speaker. Mandl is a top-rung corporate executive in the telecommunications sector. For most of the marriage, he was President and Chief Executive Officer of AT & T. Around the time the parties separated, Mandl left AT & T to start Associated Communications LLC, later renamed Teligent, Inc. ("Teligent"), a telecommunications company based in Vienna, Virginia. At Teligent, Mandl was Chairman and Chief Executive Officer.

During their marriage, the parties lived an exceptionally affluent life. They owned several houses, including one in Montgomery County.

On January 17, 1997, the parties executed a Separation and Property Settlement Agreement ("Agreement") that comprehensively resolved the financial issues arising out of the demise of their marriage. They were divorced sometime later in 1997.[3]

In Paragraph 2 of the Agreement, Mandl promised to pay certain sums as modifiable alimony.[4] The Paragraph 2 pay-

---

2. Mandl had been married once previously and Bailey had been married twice previously.

3. The exact date of the divorce is not reflected in the record.

4. The Agreement also contained a commitment by Mandl to pay other sums, also designated as alimony, that are not modifiable. Those payments are not at issue in this case.

ments are in escalating amounts, beginning at $220,000 per year, in equal quarterly payments of $55,000, for one year after execution of the Agreement, and eventually reaching $250,000 per year, in equal quarterly payments of $62,500, for the fourth year after execution of the Agreement. The payments are to continue in that amount until Bailey's death, Mandl's death, or Bailey's receipt of a total sum of $5,000,000 (including payments that might be made pursuant to another provision of the Agreement, or payments made by Mandl voluntarily, outside the requirements of the Agreement).

The parties agreed, in Paragraph 7, that the Paragraph 2 payments are subject to modification downward if Mandl suffers a material change in circumstances, "including, but not limited to, reduced compensation, retirement or disability, which affects [Mandl's] ability to make the payments." In such a situation, "said payments shall be renegotiated and modified in the light of these changed circumstances." The parties also agreed, however, that "increases in [Mandl's] income is [sic] not the substantial change in circumstances contemplated by [Paragraph 7]."

The Agreement provided that, in the event Mandl experienced a material change in circumstances that he thought warranted a modification in the Paragraph 2 payments, he was to notify Bailey in writing; the parties would "attempt to resolve the matter through negotiation"; and, if that was not successful, would "submit the matter to binding arbitration in accordance with Paragraph 15" of the Agreement.

Under Paragraph 15, "[a]ny claim or dispute arising out of or in connection with this Agreement or the interpretation or meaning of any part hereof shall be arbitrated by the parties before an arbitrator acceptable to both parties, who shall be knowledgeable in the area of dispute." If, within a one-month period after either party requests arbitration, the parties do not select an arbitrator, "the arbitrator shall be selected, at the request of either party, by the American Arbitration Association ["AAA"], and the arbitration shall proceed in accordance with then existing rules of that Association." The

award "shall be final and binding upon both parties, and judgment may be entered thereon in any court having jurisdiction."

Mandl made Paragraph 2 payments to Bailey in 1997, 1998, 1999, and 2000. His last such payment was made on December 3, 2000.

By letter of April 5, 2001, Mandl notified Bailey that he had suffered a material change in circumstances warranting a reduction in Paragraph 2 payments. Sometime that month, Mandl was terminated by Teligent, effective May 1, 2001. Teligent declared bankruptcy on May 21, 2001, seeking reorganization.

Bailey disputed Mandl's claim of a material change in circumstances and claimed she was owed an arrearage. The parties tried to resolve their disputes through negotiation, without success, and also attempted unsuccessfully to select an arbitrator, outside the AAA forum. Ultimately, on October 31, 2001, Bailey submitted a demand for arbitration to the AAA. Mandl submitted a counterclaim.

### Arbitration Proceedings

Pursuant to the AAA process, the parties chose Bruce S. Lane, Esquire ("Arbitrator"), to arbitrate their dispute. Amy Henthorn Jones served as the AAA's "ADR Case Manager" for the matter. Throughout the course of the arbitration, Jones was copied on orders and awards issued by the Arbitrator and on letters between counsel and the arbitrator.

The arbitration was conducted under the AAA Commercial Arbitration Rules then in effect ("AAA Rules"). Before the hearing, the issues for decision were defined as whether Mandl had suffered a material change in circumstances affecting his ability to make the Paragraph 2 payments required by the Agreement, so as to warrant a downward modification of those payments and, if so, the amount by which the Paragraph 2 payments would be reduced; and whether Bailey was entitled to an arrearage and, if so, the amount of the arrearage. The Arbitrator determined that Mandl bore the burden of

proof on the material change in circumstances claim and Bailey bore the burden of proof on the arrearage claim.

The arbitration hearing was conducted over four non-consecutive days, beginning on May 7, 2002, and ending on May 29, 2002. The parties and several expert witnesses testified. Numerous documents were introduced into evidence.

Of relevance to the issues on appeal, Mandl testified that he had been unemployed since the demise of Teligent and, though actively seeking employment through executive search firms, had not been able to land a position and was unlikely to do so. He attributed his dismal prospects to a combination of factors: the ongoing economic recession, including the financial aftermath of the September 11 attacks; the "literal [] collapse[]" of "the telecom world"; his age (58), which is beyond the desirable age range for incoming top-level executives; and his reputation for having taken a company into bankruptcy.

Mandl further testified that, despite his job search, he had not received any employment offers. When asked whether he had been interviewed for any positions, Mandl responded that he had had "a couple of conversations with some headhunters about some possibilities," which "didn't go anywhere," and that he had had one interview with a Philadelphia company that "didn't go anywhere" because "they ended up not hiring a CEO." He still was actively seeking employment and wanted to find a position, but had "come to realize over the last six months that it is going to be a lot tougher than I thought" and that it "[m]ay not be possible at all." He characterized his employment search as an "uphill battle."

At the conclusion of the hearing, on May 29, 2002, the Arbitrator announced: "[W]e stand adjourned. The record still remains open until we get the transcript, [one of the expert witness's] documents, and any briefs that may be required."

On June 20, 2002, Jones advised counsel in writing that, "[p]er the [A]rbitrator's direction, no further briefs or memorand[a] shall be accepted or necessary and the proceedings were declared closed on June 20, 2002. Therefore, the [A]rbi-

trator(s) shall have thirty (30) days from that date, or until July 20, 2002 to render the award."

A week later, on June 27, 2002, the Arbitrator issued the "Award of Arbitrator" ("June 27 Award"), which was divided into seven sections. In Sections I through III, the Arbitrator decided the material change in circumstances claim. He found that Mandl had proven, by a preponderance of the evidence, "that there ha[d] been, since the Agreement was entered into, a material change in his circumstances, including, but not limited to, reduced compensation, which affect[ed] his ability to make the payments provided for under Paragraph 2 of the Agreement." He further decided that the "present circumstances of the parties and justice require" that the amount of Paragraph 2 payments be reduced "to the sum of $62,500 per annum, payable in four (4) equal quarterly install-ments of $15,625."[5] He also found "that no further memoran-da of law or briefs are necessary or appropriate."

In Section IV, the Arbitrator determined that Bailey was entitled to an arrearage because Mandl had not had the authority to unilaterally cease making Paragraph 2 payments without an agreement by the parties to that effect. He then exercised discretion to make the reduction in Paragraph 2 payments retroactive to November 1, 2001, "the date on which the Demand for Arbitration presumably was received by Mr. Mandl's counsel."

In Section V, the Arbitrator computed the arrearage amounts that were due and owing. Using January 1, 2001, as the starting point, he calculated the arrearage from then until

---

**5.** In his brief, Mandl emphasizes that the Arbitrator merely reduced the *rate* at which the Paragraph 2 payments are to be made, not their *total amount*, which remained $5,000,000. While this is technically true, unless Mandl voluntarily makes other payments that are credited against the Paragraph 2 obligation, or the obligation is otherwise satisfied in accordance with the Agreement, his obligation to make Paragraph 2 payments will end upon his death. At the reduced rate of payment, he will have to live to approximately age 123 to pay the full $5,000,000 sum. It is probable, then, that the reduced rate in Para-graph 2 payments is tantamount to a reduction in the total amount of Paragraph 2 payments to be made.

September 30, 2001; for October 2001; and for November 2001 through March 31, 2002. He added those figures to arrive at a final arrearage sum of $234,374. Of particular significance to the issues on appeal, the Arbitrator stated:

> In the event of any disagreement by any party regarding the foregoing calculation, the party shall immediately submit his or her calculation (based on Sections III and IV of this Award) to the Arbitrator, who will resolve any such disagreement promptly. The record of this matter will be kept open for fifteen (15) days solely for this purpose. In addition, Mr. Mandl is reminded that a quarterly payment in the amount of $15,625 for the period April—June, 2002, is, or soon will be, due and owing.

Finally, in Section VI, the Arbitrator determined and assessed the administrative fees and costs of the AAA and decided they would be borne equally by the parties, and in Section VII, he concluded that each party would bear the cost of his or her own legal fees. In the last paragraph of the award, the Arbitrator stated: "This award is in full settlement of all claims submitted to this Arbitration."

On July 12, 2002, Mandl filed a motion to modify, challenging two findings respecting the arrearage, on the ground that they were miscalculations. First, he asserted that the starting date for calculating the arrearage was March 3, 2001, not January 1, 2001, because under the Agreement his obligation to pay began 45 days after the January 17, 1997 execution date. He asserted that the December 3, 2000 payment thus covered the period through March 2, 2001, but the June 27 Award incorrectly included part of that already-paid sum in the arrearage. Second, Mandl argued that the arrearage should be calculated based on a retroactive modification date of April 1, 2001, not November 1, 2001, because Bailey's own conduct in failing to agree to the selection of an arbitrator, and ultimately changing counsel, had delayed the arbitration process from April 1, 2001, until November 1, 2001.

By letter of July 18, 2002, Bailey contested Mandl's motion, arguing that he was attacking the substance of the June 27

Award, not merely the calculation of the arrearage, and further arguing that his arguments lacked merit in any event. There followed a series of letters by counsel further debating their positions.

On August 2, 2002, the Arbitrator held a conference with counsel. In "Interim Post–Award Order No. 1," issued on August 6 ("the August 6 Award"), the Arbitrator stated that, "[a]fter extensive discussion, counsel for the parties and the Arbitrator agreed that Paragraph 2 is ambiguous as to the period of time with respect to which each quarterly alimony payment (and especially the payment of December 3, 2000) applies," and the ambiguity created two plausible interpretations that "if resolved one way will result in a greater amount due Dr. Bailey then [sic] if resolved in another way." The August 6 Award went on to set forth a procedure, to which the parties had agreed, for gathering documents and information from prior counsel, in an effort to determine the parties' original intentions "concerning the payments due under Paragraph 2," which would be submitted to the Arbitrator by August 26, 2002. After that, the Arbitrator would "make a final determination and award regarding the arrearage and w[ould] modify Section V of the Award accordingly."

Also in the August 6 Award, the Arbitrator rejected, implicitly, Mandl's argument that the reduction in Paragraph 2 payments should have been made retroactive to April 1, 2001. The award stated that the full $234,374 arrearage payment required by Section V of the June 27 Award was "temporarily suspended," pending resolution of the time of commencement issue, and directed Mandl to pay, in lieu thereof, $125,000, representing the total of quarterly Paragraph 2 payments in the original, unmodified amounts, for the March 3, 2001, and June 3, 2001 quarters, which "*as a result of the June 27, 2002 Award, are no longer in dispute*" (emphasis added). The award concluded: "In all other respects, the AWARD of June 27, 2002 is hereby reconfirmed and remains in full force and effect." Thus, the retroactivity date remained November 1, 2001.

On August 26, 2002, the parties submitted, through counsel, written memoranda and exhibits addressing the commencement date for the Paragraph 2 payments under the Agreement (the "time of commencement" issue).

That was the posture of the arbitration when, on August 30, 2002, the *Washington Post* and the *Wall Street Journal* reported that Mandl had been named Chief Executive Officer of Gemplus International SA ("Gemplus"), a major French technology company.

The next day, Saturday, August 31, 2002, Bailey hand-delivered to the Arbitrator a motion to reopen the hearing for "limited, targeted discovery directed to Mr. Mandl's communications with his new employer and the terms of his employment." A copy of the *Washington Post* article was attached. Bailey argued that Mandl must have been in discussions with Gemplus by May, when he testified at the arbitration hearing, but did not disclose that fact in response to questions calling for it. Bailey accused Mandl of concealing material facts about his relationship with Gemplus and making representations about his unemployability that were, "at best, wildly exaggerated, if not deliberately false." She maintained that the allegedly concealed information and misrepresentations were relevant to the material change in circumstances claim, and suggested that the Arbitrator should re-decide that claim, based on evidence she anticipated would be generated in discovery.

On September 3, 2002 (the day after Labor Day), before receiving a response from Mandl, the Arbitrator issued "Interim Post–Award Order No. 2" ("the September 3 Award"), granting Bailey's motion to reopen the arbitration hearing. He determined, based on press reports about Mandl's hiring, that "fairness and justice require [the Arbitrator] to reopen the hearing (on a limited basis) and to reconsider his Award." He further stated:

> The Arbitrator intends to ascertain whether [Mandl] failed at any time during this proceeding to disclose material information concerning his income and employment which

information might have had a significant effect on the Arbitrator's Award.

The September 3 Award stated that an expedited schedule for resolving the issue of whether Mandl had failed to disclose information material to his income and employment would be established; in the meantime, Mandl was to continue making Paragraph 2 payments in accordance with the June 27 Award. He (the Arbitrator) would "rule on the proper calculation of the arrearage as part of his reconsideration of the Award."

By letter of September 10, 2002, Mandl vigorously objected to the Arbitrator's decision to reopen the hearing. (His counsel had received the September 3 Award and the August 31 motion to reopen the hearing the same day). He argued that the Arbitrator lacked authority, under the AAA Rules, to reopen the hearing to re-decide the claims decided in the June 27 Award; rather, his authority was limited to correcting computational errors and clerical mistakes in that award.

Bailey responded, on September 17, arguing that the Arbitrator in fact had the authority to reopen the hearing and modify the June 27 Award because the record was not closed; that Mandl had waived his right to challenge the Arbitrator's authority to act by seeking a substantive modification to the arrearage portion of the June 27 Award that did not merely challenge the Arbitrator's calculations; and that the Arbitrator had continuing authority to modify the June 27 Award because it pertained to alimony (an argument she later abandoned).

On October 7, 2002, the Arbitrator issued a "Modification to Award and Final Order" ("October 7 Award"), vacating the September 3 Award. He stated that, upon receiving the information about Mandl's employment by Gemplus, he had been "of the view that the hearing should be reopened for the limited purpose of hearing evidence, pro and con, as to whether Mr. Mandl failed to disclose material information concerning his income and employment which information might have had a significant effect on the Arbitrator's Award." He noted that, in finding, in the June 27 Award, that Mandl had proved

that there was a material change in circumstances affecting his ability to make Paragraph 2 payments and warranting a substantial reduction in those payments, he had given "great weight" to Mandl's testimony about the loss of his job, his "fruitless search for comparable employment," and his dismal prospects of ever finding comparable employment. After the June 27 Award was issued, the matter had "remained open, principally for the purpose of ascertaining the correct computation of certain alimony arrearages." After issuing the September 3 Award, however, he had consulted the AAA and was advised that the AAA Rules "prohibit[ed] him from reopening the Hearing unless a court of competent jurisdiction so direct[ed]." Accordingly, adopting the AAA's interpretation of its rules as his own, the Arbitrator decided to vacate the September 3 Award reopening the hearing.[6]

The Arbitrator then proceeded to decide the time of commencement issue, ruling in Mandl's favor. The parties had not found any documents or information pertaining to the issue. The Arbitrator determined from the plain language of the Agreement that Paragraph 2 payments were to begin on March 3, 1997, for the quarter then starting. Therefore, the arrearage properly was to be calculated on an "Alimony Year" starting March 3, not January 1. The Arbitrator modified Section V of the June 27 Award in accordance with that determination. Finally, the Arbitrator commented that he had selected the November 1, 2002 retroactivity date with full awareness of Mandl's contention that Bailey had acted to delay the starting date for arbitration of the parties' dispute.

---

**6.** Mandl has included in the record extract a September 19, 2002 letter by Jones informing the parties that Mandl would have until September 27, 2002 to respond to Bailey's September 17 letter, and "[t]hereafter, the Arbitrator, in consultation with the [AAA], will make a determination as promptly as possible as to whether in this case he may reopen the hearing as proposed by Interim Post–Award Order No. 2." Bailey complains that this letter should not have been included in the record extract because it was not part of the record. Bailey is correct that the letter is not in the record. We see no impact from its being included in the record extract, however, because its contents were stated by the Arbitrator in the October 7 Award.

### Action to Vacate in Circuit Court

On November 6, 2002, in the Circuit Court for Montgomery County, Bailey filed, pursuant to Md.Code (2002), section 3–224 of the Courts and Judicial Proceedings Article ("CJ"), a three-count petition to vacate the June 27 Award and the October 7 Award. In count I, she alleged that Mandl had "conceal[ed] . . ., or fail[ed] to disclose, his putative employment relationship with Gemplus and compensation he will or has received therefrom," and therefore both awards had been procured by "corruption, fraud, or other undue means."

In count II, Bailey alleged that the Arbitrator had refused to hear evidence material to the parties' controversy, that is, evidence bearing on when Mandl first took part in the process that resulted in his being hired by Gemplus, and whether he had concealed or failed to disclose such information; and on that basis sought vacation of the June 27 and October 7 awards. Finally, in count III, Bailey alleged that, if the court did not vacate the June 27 Award, under counts I or II, it should vacate that portion of the October 7 Award modifying the arrearage, on the ground that the Arbitrator had exceeded his authority in so doing.

Before Mandl filed a responsive pleading or initial motion, Bailey moved for summary judgment on count II and requested a hearing. The next day, Mandl filed a motion to dismiss the petition on a number of grounds, including that it was not timely filed as a matter of law.

After the parties filed oppositions and reply memoranda, the court scheduled all motions for a single hearing, which took place on May 22, 2003. At the conclusion of the hearing, the court announced that it was granting summary judgment in favor of Bailey on count II, and gave its reasons, which we shall discuss below. The court also announced that it was dismissing counts I and III as moot, because of its ruling on count II, and was denying Mandl's motion to dismiss.

On June 11, 2003, the court issued an Order and Final Judgment granting summary judgment in favor of Bailey on count II of the complaint; vacating the October 7, 2002

Award; directing that, in accordance with CJ section 3–225(b), the Arbitrator or his successor "shall conduct further arbitration proceedings consistent with" the court's oral ruling, a transcript of which was attached; dismissing counts I and III as moot; and denying Mandl's motion to dismiss.

## STANDARD OF REVIEW

Upon motion of a party, the circuit court may grant summary judgment when there is no genuine dispute of material fact and, on the undisputed material facts, the moving party is entitled to judgment as a matter of law. Md. Rule 2–501(e) (2004); *Wajer v. Baltimore Gas and Elec. Co.,* 157 Md.App. 228, 240, 850 A.2d 394 (2004). A material fact is a fact that, depending on how it is decided by the trier of fact, will affect the outcome of the case. *Arroyo v. Bd. of Educ. of Howard County,* 381 Md. 646, 654, 851 A.2d 576 (2004).

Both prongs of the summary judgment ruling are legal determinations. *Salamon v. Progressive Classic Ins. Co.,* 379 Md. 301, 307, 841 A.2d 858 (2004). For that reason, we review a circuit court's decision to grant summary judgment *de novo. Id.; Phillips v. Allstate Indemn. Co.,* 156 Md.App. 729, 740, 848 A.2d 681 (2004).

## DISCUSSION

## I.

## (A)

Arbitration is the process by which parties voluntarily agree to substitute a private tribunal for an otherwise available public tribunal to decide specified disputes. *Cheek v. United Healthcare of the Mid–Atlantic, Inc.,* 378 Md. 139, 146, 835 A.2d 656 (2003) (citing *Gold Coast Mall, Inc. v. Larmar Corp.,* 298 Md. 96, 103, 468 A.2d 91 (1983)). Arbitration is encouraged in Maryland because it provides an informal, expeditious, and inexpensive alternative to conventional litiga-

tion. *RTKL Assocs., Inc. v. Baltimore Co.*, 147 Md.App. 647, 656, 810 A.2d 512 (2002).

The obligation to arbitrate is a creature of contract. *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83, 123 S.Ct. 588, 154 L.Ed.2d 491 (2002); *Cheek, supra*, 378 Md. at 147, 835 A.2d 656; *C.W. Jackson & Assocs., Inc. v. Brooks*, 289 Md. 658, 666, 426 A.2d 378 (1981). A party cannot be compelled to submit a dispute to arbitration unless he has agreed to do so. *Wells v. Chevy Chase Bank, F.S.B.*, 363 Md. 232, 249, 768 A.2d 620 (2001); *Curtis G. Testerman Co. v. Buck*, 340 Md. 569, 579, 667 A.2d 649 (1995). Whether parties have agreed to arbitrate a particular dispute is a threshold question of law that is for the court to decide. *Testerman, supra*, 340 Md. at 579, 667 A.2d 649 (quoting *Holmes v. Coverall North Am., Inc.*, 336 Md. 534, 649 A.2d 365 (1994)).

Also, because private arbitration is a matter of contract, an arbitrator derives his power from the arbitration agreement itself. *MCR of Am., Inc. v. Greene*, 148 Md.App. 91, 111–12, 811 A.2d 331 (2002). The parties delineate the extent of the arbitrator's authority by the scope of their agreement to arbitrate and submission to arbitration. *Id.* at 112, 811 A.2d 331; *Barclay Townhouse Assocs. v. Stephen L. Messersmith*, 67 Md.App. 493, 497, 508 A.2d 507 (1986). Maryland law does not restrict arbitration to issues of fact. *Soc'y of Am. Foresters v. Renewable Natural Res. Found.*, 114 Md.App. 224, 235, 689 A.2d 662 (1997) (quoting *Contract Constr., Inc. v. Power Technology Ctr. Ltd. P'ship*, 100 Md. App. 173, 185, 640 A.2d 251 (1994)). Unless the parties agree otherwise, issues of fact *and* law are submitted to the arbitrator for decision. *Soc'y of Am. Foresters, supra*, 114 Md.App. at 235, 689 A.2d 662. Arbitration's contractual nature is the basis for a mainstay principle of the substantive common law of arbitration: *"functus officio,"* a Latin phrase meaning "a task performed." BLACK'S LAW DICTIONARY 682 (7th ed.1999); *Brzowski v. Md. Home Imp. Comm'n*, 114 Md.App. 615, 636, 691 A.2d 699 (1997). This principle holds that once the arbitrator has fulfilled the function and purpose of his office,

by making a final award, he has no more official authority and can do nothing more in regard to the subject matter of the arbitration. Thus, an arbitrator may not revisit the merits of an award after it has been issued. *Brzowski, supra,* 114 Md.App. at 636, 691 A.2d 699 (quoting *LaVale Plaza, Inc. v. R.S. Noonan, Inc.,* 378 F.2d 569, 572 (3d. Cir.1967)). " 'The policy which lies behind [the *functus officio* principle] is an unwillingness to permit one who is not a judicial officer and who acts informally and sporadically, to re-examine a final decision which he has already rendered, because of the potential evil of outside communication and unilateral influence which might affect a new conclusion.' " *Id.* (quoting *McClatchy Newspapers v. Cent. Valley Typographical Union No. 46,* 686 F.2d 731, 734 (9th Cir.1982)).

There are well-settled exceptions to the *functus officio* principle. First, an arbitrator has the power to correct a mistake evident on the face of the award. *See* MARTIN DOMKE, DOMKE ON COMMERCIAL ARBITRATION § 26:1 (3d ed.2003) (citing *Colonial Penn Ins. Co. v. Omaha Indem. Co.,* 943 F.2d 327, 332 (3d Cir.1991)); *see also Baltimore Teachers Union, Am. Fed'n of Teachers, Local 340, AFL–CIO v. Mayor and City Council of Baltimore,* 108 Md.App. 167, 180, 671 A.2d 80 (1996). Second, when an award is not complete because it does not adjudicate an issue submitted to the arbitrator for decision, then as to that issue, the arbitrator has not exhausted his function, and that issue remains open for determination. *See* DOMKE, *supra,* § 26:1 (citing *Colonial Penn, supra,* 943 F.2d at 332, and *LaVale, supra,* 378 F.2d at 573). Finally, when an award, although seemingly complete, leaves doubt about whether the submission has been fully executed, the arbitrator has the power to clarify the ambiguity. *See* DOMKE, *supra,* § 26:1; *see also McClatchy Newspapers, supra,* 686 F.2d at 734 n. 1.

When an arbitrator's authority is exhausted, under the *functus officio* doctrine, the parties may by written agreement reinstate that authority. *See* DOMKE, *supra,* § 26:1. *See also Glass, Molders, Pottery, Plastics and Allied Workers*

*Intern. Union, AFL–CIO, CLC, Local 182B v. Excelsior Foundry Co.*, 56 F.3d 844, 848 (7th Cir.1995); *Arbitration of the Board of Directors of the Ass'n of Apartment Owners of Tropicana Manor*, 73 Haw. 201, 207, 830 P.2d 503 (1992).

The Maryland Uniform Arbitration Act ("MUAA"), codified at CJ sections 3–201 to 234, recognizes the validity and enforceability of written agreements to submit disputes to arbitration, and governs such agreements. CJ § 3–206.[7] The MUAA embodies a legislative policy favoring arbitration as an alternative method of dispute resolution. *Snyder v. Berliner Constr. Co., Inc.*, 79 Md.App. 29, 34, 555 A.2d 523 (1989) (citing *Bel Pre Med. Ctr., Inc. v. Frederick Contractors, Inc.*, 21 Md.App. 307, 320 A.2d 558 (1974), *rev'd on other grounds*, 274 Md. 307, 334 A.2d 526 (1975)). To further that policy, the General Assembly has severely restricted the role the courts play in the arbitration process. *Id.; Bd. of Educ. of Prince George's County v. Prince George's County Educators' Ass'n, Inc.*, 309 Md. 85, 98, 522 A.2d 931 (1987).

To prevent the possibility that a reviewing court will substitute its judgment for the decision of the arbitrator, thereby frustrating the purpose of arbitration, the General Assembly has narrowly confined, in CJ section 3–224, the circumstances in which the court has the power to vacate an arbitral award. The grounds for vacating an arbitral award are:

(1) [The] award was procured by corruption, fraud, or other undue means;

(2) There was evident partiality by an arbitrator appointed as a neutral, corruption in any arbitrator, or misconduct prejudicing the rights of any party;

(3) The arbitrators exceeded their powers;

(4) The arbitrators refused to postpone the hearing upon sufficient cause being shown for the postponement, refused to hear evidence material to the controversy, or otherwise so conducted the hearing, contrary to the

---

7. The MUAA contains an exception for certain employment agreements. CJ § 3–206(b). That exception does not apply here.

provisions of § 3–213, as to prejudice substantially the rights of a party; or

(5) There was no arbitration agreement as described in § 3–206, the issue was not adversely determined in proceedings under § 3–208, and the party did not participate in the arbitration hearing without raising the objection.

CJ § 3–224(b).

■■■ The party challenging the arbitration award bears the burden of proving the existence of one of the grounds for vacating it. *MCR, supra,* 148 Md.App. at 117, 811 A.2d 331; *Choice Hotels Int., Inc. v. Felizardo,* 278 F.Supp.2d 590, 594 (D.Md.2003). When the petition to vacate has been timely filed and the burden of proof has been met, the court shall vacate the award. CJ § 3–224(b). However, the court "shall not vacate the award … on the ground that a court of law or equity could not or would not grant the same relief." CJ § 3–224(c).

A court's authority to modify or correct an arbitral award is likewise limited by the MUAA. Under section 3–223(b), upon petition, a court shall modify or correct an award if:

(1) There was an evident miscalculation of figures or an evident mistake in the description of any person, thing, or property referred to in the award;

(2) The arbitrators have awarded upon a matter not submitted to them and the award may be corrected without affecting the merits of the decision upon the issues submitted; or

(3) The award is imperfect in a matter of form, not affecting the merits of the controversy.

Upon granting a petition to modify or correct, the court shall modify or correct the award to effect its intent and then confirm the award as modified; otherwise, it shall confirm the award as made. CJ § 3–223(c).

■■■ Several provisions of the MUAA concern the conduct of arbitration proceedings. When parties to an arbi-

tration knowingly and voluntarily agree upon the rules of procedure that will govern the arbitration of their disputes, Maryland courts will recognize the validity of such procedures, so long as they comport with basic requirements of due process. *Kovacs v. Kovacs,* 98 Md.App. 289, 304–05, 633 A.2d 425 (1993) (holding that parties may waive their procedural rights under the MUAA but noting that if the arbitration proceedings do not conform to "notions of basic fairness or due process," a court may refuse to confirm an award). When parties to an arbitration agreement have not established rules of procedure to govern the arbitration, the procedural provisions of the MUAA control. *See Blitz v. Beth Isaac Adas Israel Congregation,* 115 Md.App. 460, 477, 694 A.2d 107 (1997), *rev'd on other grounds,* 352 Md. 31, 720 A.2d 912 (1998) (noting that because the parties to an arbitration agreement did not provide for the recovery of attorney's fees, the court would look to the MUAA to see if awarding attorney's fees was authorized). Included among them is CJ section 3–222, which allows a party to apply to the arbitrator to modify or correct his award. The application to modify must be filed within 20 days after delivery of the award to the applicant, and written notice and an opportunity to object within 10 days must be given the opposing party. CJ §§ 3–222(a) and (b). The arbitrator may modify or correct the award on any ground stated in CJ section 3–223(1),(2), or (3), or for the purpose of clarity. CJ § 3–222(c).

Also under CJ section 3–222(d), the arbitrator shall modify or correct an award consistent with an order of court issued pursuant to a petition to the court to correct or modify (CJ section 3–223), to vacate (CJ section 3–224), or to confirm (CJ section 3–227). Under CJ § 3–222(e), the modified or corrected award is subject to court correction or modification, under CJ section 3–223; to vacation, under CJ section 3–224; or to confirmation, under CJ section 3–227.

In this case, under Paragraph 15 of the Agreement, the parties agreed that an arbitration in the AAA forum would be conducted "in accordance with then existing rules" of the

AAA. When the demand for arbitration was submitted to the AAA, on October 31, 2001, the AAA Rules then in effect were the Commercial Arbitration Rules as amended and effective on September 1, 2000. Our references to the AAA Rules in this opinion are to that set of rules, unless otherwise noted.[8] We shall briefly review the pertinent provisions of the AAA Rules.[9]

Parties whose agreement provides for AAA arbitration are "deemed to have made the[][AAA] rules a part of their arbitration agreement." R–1. By written agreement, the parties may vary the procedures set forth in the AAA Rules. *Id.* In addition to a final award, the arbitrator may make other awards, including interim, interlocutory, or partial awards. R–45(b). Any award made must be in writing. R–44. In a final award, the arbitrator must assess the fees, expenses, and compensation for the arbitration. R–45(c).

At the arbitration hearing, the arbitrator determines the admissibility, relevance, and materiality of the evidence offered. R–33(b). If at the conclusion of the hearing the parties agree or the arbitrator directs that documents or other evidence be submitted to the arbitrator after the hearing, those items must be filed with the AAA, which transmits them to the arbitrator. R–34(b). In that circumstance, and if the date set by the arbitrator for receipt of the materials is later than the date for receiving briefs, then, under R–37, the later date serves as the closing date for the hearing. The award shall be made no later than 30 days from the date of closing of the hearing, unless the parties agree otherwise or the law requires. R–43.

"The hearing may be reopened on the arbitrator's initiative, or upon application of a party, *at any time before the award is*

---

8. The AAA Rules were amended, effective July 1, 2002, through January 1, 2003. None of the amendments changed any of the provisions in the rules pertinent to this case, however.

9. There has been no contention in this case by either party at any time that the AAA Rules that governed the arbitration did not afford the parties a fundamentally fair arbitration process.

*made."* R–38 (emphasis added). If the hearing is reopened, the arbitrator must make an award within 30 days of the closing of the reopened hearing. *Id.*

The parties by mutual agreement may modify any period of time set by the rules, and the AAA or arbitrator may for good cause extend any time period set by the rules, except the time period for making an award. R–40.

R–48 governs modification of an award. "Within 20 days after the transmittal of an award, any party, upon notice to the other parties, may request the arbitrator, through the AAA, to correct any clerical, typographical, or computational errors in the award." R–48. *In modifying the award, "[t]he arbitrator is not empowered to redetermine the merits of any claim already decided." Id.* (emphasis added).

Under R–39, entitled "Waiver of Rules," a party who "proceeds with the arbitration after knowledge that any provision or requirement of these rules has not been complied with and who fails to state an objection in writing shall be deemed to have waived the right to object." Finally, R–55, captioned "Interpretation and Application of Rules," states that "[t]he arbitrator shall interpret and apply these rules insofar as they relate to the arbitrator's powers and duties." "Additionally, [a]ll other rules shall be interpreted and applied by the AAA." *Id.*

### (B)

As explained above, count II of Bailey's petition, founded on CJ section 3–224(b)(4), alleged that the Arbitrator had "refus[ed] to hear evidence material to the controversy," namely the evidence of the circumstances leading up to Mandl's employment by Gemplus. The circuit court granted summary judgment in favor of Bailey on that count based on the arguments she advanced. It determined that there was no genuine dispute of material fact, and further concluded that Bailey was entitled to judgment as a matter of law.

The court reasoned that the June 27 Award never was a final award and therefore the Arbitrator was free to re-decide

the material change in circumstances claim. Its reasoning on this issue was two-fold. First, it concluded that the Arbitrator's statement, in the June 27 Award, that he would decide any disagreement submitted by a party about the calculation of the arrearage, and that he was keeping the record open for fifteen days for that purpose, was a "reservation of jurisdiction" to decide further substantive issues relating to the arrearage claim, which made the June 27 Award non-final. Second, and alternatively, the court concluded that, in his motion to modify, Mandl had sought a re-decision of two "substantive" issues—the Paragraph 2 starting date and the reduction retroactivity date—and that, by doing so, he had acknowledged the non-finality of the June 27 Award, and under principles of waiver and estoppel could not assert a contrary position. In short, the court concluded that the June 27 Award was in fact not final and was by law not final.

From that premise—that the June 27 Award was not final—the court further reasoned that, as of the time of Bailey's motion to reopen the hearing (August 31), the Arbitrator had authority to hear additional evidence, including evidence about the material change in circumstances claim, and to re-determine that claim. In the October 7 Award, the Arbitrator expressly recognized that evidence that might exist about Mandl's relationship to Gemplus at the time of the May 2002 arbitration hearing could be relevant to the material change in circumstances controversy. Therefore, as a matter of law, by refusing to reopen the proceedings to hear whatever that evidence that might be, the Arbitrator refused to hear evidence material to the parties' controversy, within the meaning of CJ section 3–224(b)(4).

On appeal, Mandl contends the circuit court correctly determined that there was no genuine dispute of material fact but incorrectly determined that Bailey was entitled to judgment as a matter of law. He argues that the June 27 Award was final. The Arbitrator's reservation of jurisdiction merely reminded the parties that they could move to modify the arrearage under R–48, and notified them to do so, if at all, within 15, not 20, days. Mandl's July 12 motion challenged the calculation of

the arrearage award, under R–48. Under that same rule, and under the *functus officio* doctrine, the Arbitrator did not have the power to re-decide the material change in circumstances claim.

In addition, Mandl argues that, even if the June 27 Award was not final as to all claims, it was final as to the material change in circumstances claim, and therefore the Arbitrator was without authority to re-decide that claim. In either situation, when Bailey filed her motion to reopen the hearing, the Arbitrator had no authority to re-decide the material change in circumstances claim. The Arbitrator's authority was governed by the AAA Rules, which the Arbitrator, in consultation with the AAA, interpreted as not permitting him to hear new evidence on the material change in circumstances claim. The circuit court erred by failing to defer to the Arbitrator's interpretation of the AAA rules. Finally, by filing his July 12 motion, Mandl did not waive his right to oppose reopening the hearing or become estopped to oppose reopening the hearing.

Although Bailey agrees that the circuit court properly decided that there was no genuine dispute of material fact, she disagrees that the court's ruling was legally incorrect, for the same reasons the court gave in making its ruling. She also asserts that Mandl did not raise below, and therefore cannot argue on appeal, that the court owed deference to the Arbitrator's interpretation of the AAA Rules.

### (C)

We agree with the parties that the material facts are not in dispute. The facts that have a bearing on the Arbitrator's refusal *vel non* to hear evidence material to the controversy are those that form the procedural chronology of the case. There is no disagreement about those facts. It is their legal significance—which is the second prong of the summary judgment determination—that is in dispute. The question we must address on appeal, then, is whether, on the undisputed facts, the Arbitrator as a matter of law improperly refused to

hear evidence material to the parties' controversy, to the substantial prejudice of Bailey's rights. CJ § 3–224(b)(4).

In the October 7 Award, the Arbitrator gave his reason for not granting (or more precisely vacating his prior decision to grant) Bailey's motion to reopen the arbitration hearing: The AAA Rules did not authorize him to do so. Because his interpretation of the AAA Rules (reached reluctantly, and upon consultation with the AAA), was that he was not permitted to reopen the hearing to accept additional evidence on that claim, he declined to do so.

As noted, the parties contracted in their Agreement for the AAA Rules to govern the procedure for any dispute they submitted to arbitration in the AAA forum, thereby making the AAA Rules part of their Agreement. (Even if they had not done so, under R–1, the AAA Rules are deemed to have been made a part of the contract of parties who have agreed to arbitrate in that forum.) The meaning of the Agreement, including the AAA Rules, was a legal issue for the Arbitrator, not the court, to decide. *Soc'y of Am. Foresters, supra,* 114 Md.App. at 235–36, 689 A.2d 662. The AAA Rules give the individual arbitrator appointed by the AAA the authority to interpret the AAA Rules concerning the individual arbitrator's powers and duties. The Arbitrator did so.[10]

■■■ Under the tightly restricted scope of circuit court review of an arbitrator's decision under the MUAA, factual findings by an arbitrator are virtually immune from challenge and decisions on issues of law are reviewed using a deferential standard on the far side of the spectrum away from a usual, expansive *de novo* standard. *See MCR, supra,* 148 Md.App. at 120, 811 A.2d 331 (quoting *Upshur Coals Corp. v. United*

---

**10.** The record does not support Bailey's contention that Mandl did not argue before the circuit court that the court should defer to the Arbitrator's interpretation of the AAA Rules. Mandl did make that argument. The argument is not dispositive of our analysis in any event. Several courts have held, however, that the AAA's interpretation of its own rules is entitled to a high degree of deference. *See, e.g., Diemaco v. Colt's Mfg. Co.,* 11 F.Supp.2d 228, 232 (D.Conn.1998); *Barge v. St. Paul Fire & Marine Ins. Co.,* 245 Ga.App. 112, 115, 535 S.E.2d 837 (2000).

*Mine Workers of America*, 933 F.2d 225, 229 (4th Cir.1991)). *See also Baltimore Teachers Union, supra,* 108 Md.App. at 181, 671 A.2d 80. An arbitrator's mere error of law or failure to understand or apply the law is not a basis for a court to disturb an arbitral award. *MCR, supra,* 148 Md.App. at 120, 811 A.2d 331 (quoting *Southern Md. Hosp. Center v. Edward M. Crough, Inc.,* 48 Md.App. 401, 407, 427 A.2d 1051 (1981)). Only a completely irrational decision by an arbitrator on a question of law, so extraordinary that it is tantamount to the arbitrator's exceeding his powers, will warrant the court's intervention. *See* CJ §§ 3–223 and 3–224; *Rourke v. Amchem Prods. Inc.,* 153 Md.App. 91, 129, 835 A.2d 193 (2003) (quoting *O–S Corp. v. Samuel A. Kroll, Inc.,* 29 Md.App. 406, 409, 348 A.2d 870 (1975)); *MCR, supra,* 148 Md.App. at 106, 811 A.2d 331; *Southern Md. Hosp. supra,* 48 Md.App. at 409, 427 A.2d 1051.

The circuit court did not apply that standard of review to the Arbitrator's decision. That itself was error. Moreover, the proper standard of review compels the conclusion that the Arbitrator's interpretation of the AAA Rules as not authorizing him to reopen the hearing and take additional evidence was not irrational, under a plain reading of those rules and taking into consideration the common law doctrine of *functus officio,* which undergirds them. As we shall explain, the Arbitrator's decision was legally correct and therefore could not have been irrational.

When it was issued, the June 27 Award was a final and complete arbitration award. It fully decided the two claims submitted for decision: Mandl's material change in circumstances claim and Bailey's arrearage claim. It also assessed fees and expenses; determined the issue of attorney's fees, under the Agreement; and said it was "in full settlement of all claims submitted to this Arbitration." The award was complete in that there was no claim or issue submitted to the Arbitrator that was left undecided. *See Rocket Jewelry Box, Inc. v. Noble Gift Packaging, Inc.,* 157 F.3d 174, 176 (2d Cir.1998). Nor was it an interim or interlocutory award. It also met the criteria for being in the form of a final award,

under R–44, and covering the scope of a final award, under R–45, in that it was in writing and assessed fees and expenses.

The language of the June 27 Award showed that the Arbitrator understood that his decision on the material change in circumstances claim, including the retroactivity date, was final, *i.e.*, was being resolved conclusively, once and for all. *Rocket Jewelry Box, supra,* 157 F.3d at 176. In Section V, which decided the arrearage claim in Bailey's favor and calculated an award based on that decision, the Arbitrator directed that any party "disagree[ing]" with the calculation of the arrearage was to immediately submit his or her calculation "based on Sections III and IV of this Award." The sections he referenced are those in which he decided the material change of circumstances claim in full and decided that Bailey was entitled to an arrearage award. Thus, the Arbitrator's very words evidenced an intention that his decision about the material change in circumstances claim and his decision about entitlement to an arrearage claim would under no circumstances be revisited.

Moreover, the language of the June 27 Award showed that the Arbitrator intended that his decision about the arrearage award was final and complete, subject to any dispute the parties might raise about its calculation. The Arbitrator conducted the proceedings under the AAA Rules and we must presume that he was familiar with them. *See* DOMKE, *supra,* § 38:7 ("Every reasonable presumption and intendment will be made . . . of the arbitrator['s] acts and proceedings."). He would have known, then, that under R–48, one of the parties could move to modify the June 27 Award "to correct any clerical, typographical, or computational errors" and that, if that were to happen, he was "not empowered to redetermine the merits of any claim already decided." *See Fradella v. Petricca,* 183 F.3d 17, 19 (1st Cir.1999) (holding that an award is final when it evidences the arbitrator's intention to resolve all the issues, even when arbitrator purports to retain jurisdiction in case need arises to resolve a subsidiary matter).

The circuit court erroneously read the June 27 Award as if it were an interim, partial award that did not decide the calculation of arrearage issue and reserved jurisdiction to decide it at a later date, upon the parties' request. The award was not interim because, as issued, it was intended to be the Arbitrator's last award, barring a motion to modify challenging the calculation of the arrearage. The award also was not partial because it decided all the claims. If Mandl had not filed a motion to modify, the award would have stood, fully and finally, without the need for any further action by the Arbitrator.[11] When the Arbitrator issued the June 27 Award, his task was fully performed.

The June 27 Award in this case was final and complete when it was issued and remained so until Mandl filed his motion to modify the arrearage, on July 12. Necessarily, the filing of a Rule 48 motion to modify destroys the finality of that part of the award challenged by the motion because, depending on the ruling on the motion, it might be changed; it makes the entire award no longer complete, because there is an issue not yet decided—whether to grant the motion to modify. *See* Domke, *supra*, at § 37:2.

Therefore, in this case, as of July 12, the section of the June 27 Award in which the Arbitrator decided the computation of

---

11. Bailey relies on *Wayland Lum Constr., Inc. v. Kaneshige*, 90 Hawai'i 417, 978 P.2d 855 (1999), to argue that the June 27 Award was not final when issued. That case is plainly distinguishable. There, the arbitrator and the parties agreed that the arbitrator would circulate a *draft* award, which was labeled "final," but said that the arbitrator was retaining jurisdiction to address, clarify, and resolve any issues or questions raised by the parties in 14 days "concerning modification, implementation, and or interpretation" of the award. *Id.* at 420, 978 P.2d 855. The parties presented written submissions and the arbitrator then issued a "Final Award," which awarded a lower amount of damages than that stated in the draft award. Ultimately, the Supreme Court of Hawaii rejected the claimant's argument that, under the *functus officio* doctrine, the arbitrator had been without authority to issue the "Final Award." The court held that the draft award did not implicate the *functus officio* doctrine because it never was intended by the arbitrator or the parties to be a final award. In the case at bar, as we have explained, the language of the June 27 Award evidenced an intention that it be final.

the arrearage no longer was final and the entire award was no longer complete. This did not revive the Arbitrator's authority to re-decide other already-decided issues, however.

The plain language of Rule 48 does not permit an arbitrator to re-determine other, already-decided claims, upon a party's filing a motion to modify. Those claims remain finally decided. *Brzowski, supra,* 114 Md.App. at 636, 691 A.2d 699. Rule 48 mirrors the *functus officio* doctrine, which holds that, even when an arbitral award is incomplete, in that it finally decides a claim but leaves another claim undecided, the remaining authority of the arbitrator is to decide the undecided claim, and thus render a *final and complete* award. The incompleteness of an award does not revive the arbitrator's authority to re-decide an already-decided claim. *LaVale, supra,* 378 F.2d at 573. This is consistent with the exceptions to the *functus officio* principle, authorizing an arbitrator to correct a mistake in the award, complete an award that is not complete, or clarify an ambiguous award. *Id.; see also McClatchy Newspapers, supra,* 686 F.2d at 734 n. 1. *Cf. Bull HN Information Systems, Inc. v. Hutson,* 229 F.3d 321, 327–28 (1st Cir.2000) (partial award on distinct and discrete claim was final even when parties anticipated further proceedings on other claims); *Trade & Transport, Inc. v. Natural Pet. Charterers, Inc.,* 931 F.2d 191, 195 (2d. Cir.1991) (holding that, when parties asked arbitrator to issue an award on liability only, award was a partial final award and arbitration panel was without authority to revisit the issue of liability); *Island Creek Coal Sales Co. v. City of Gainesville,* 729 F.2d 1046, 1049 (6th Cir.1984) (interim award that disposed of single self-contained and discrete issue is final as to that issue).

The merit *vel non* of the grounds for Mandl's motion to modify did not have any effect on the limited authority the Arbitrator had under Rule 48 and the *functus officio* principle to rule on the motion to modify. Rule 48 authorized the Arbitrator to decide the motion to modify. Obviously, that authority encompassed the power to decide whether the motion had merit, which further encompassed the authority to

decide whether it was sought on a ground permitted by the rule. Under the *functus officio* doctrine, the Arbitrator's authority did not include the power to re-decide already-decided claims, regardless of whether Mandl's motion to modify was brought on proper grounds. Those claims remained finally decided, regardless of the merit of the motion to modify. Such an improperly grounded motion simply would have dictated that the Arbitrator exercise the authority he had to decide the motion to deny it.

■■■ By the same token, even if Mandl's motion lacked merit, because it did not assert a ground permitted by Rule 48, the consequence of his filing the motion was not to preclude him from taking the position that the award was not final. In an arbitration context, as in other areas of the law, waiver is "the intentional relinquishment of a known right, or such conduct as warrants an inference of the relinquishment of such right, and may result from an express agreement or be inferred from the circumstances." *The Redemptorists v. Coulthard Services, Inc.,* 145 Md.App. 116, 136, 801 A.2d 1104 (2002).

The case Bailey cites on waiver is inapposite. In *Bd. of Educ. v. L.R. Foy Constr. Co., Inc.,* 237 Kan. 1, 697 P.2d 456 (1985), an arbitration panel was required by rule to issue its decision within 30 days of the close of the hearing. The panel issued its award after that deadline. Foy moved for clarification of the award. Later, on court review, Foy argued that the panel had lost jurisdiction over the matter entirely when it did not render a decision in 30 days, and therefore the award was invalid. The appellate court concluded that it could be inferred from Foy's filing a motion to clarify that "acknowledged the jurisdiction of the [arbitration] panel," that he was relinquishing the right to take the inconsistent position that the arbitration panel had lost jurisdiction over the case. *Id.* at 4, 697 P.2d 456. Here, by contrast, in his motion to modify, whether based on a proper ground or not, Mandl did not take the position that the Arbitrator had the authority to re-determine the material change in circumstances claim. That

position cannot be inferred from anything said or done by Mandl after the June 27 Award was issued. Accordingly, there was no inconsistency in conduct from which waiver could be inferred.

That having been said, the undisputed facts show that one of the arguments made in Mandl's motion to modify was within the ambit of Rule 48, in any event. Mandl was asserting that part of the arrearage calculated by the Arbitrator was a double recovery.[12] Federal courts of appeal interpreting section 11 of the Federal Arbitration Act, 9 U.S.C. Section 1 et seq. ("FAA"), which permits a court to modify an award for, *inter alia,* an evident material miscalculation of figures, have held that an arbitration award that imposes a double recovery, by ordering a party to pay sums that already have been paid, or are covered elsewhere in the award, is a "materially unjust miscalculation." *Eljer Mfg., Inc. v. Kowin Dev. Corp.,* 14 F.3d 1250, 1254 (7th Cir.1994). *See also Transnitro, Inc. v. M/V Wave,* 943 F.2d 471, 474 (4th Cir.1991) (holding that federal district courts have the power under section 11 to correct an "evident material mistake" attributable to one or both parties to the arbitration).

The AAA standard for a motion to modify under R–48, permitting a motion for "computational errors," is at least as broad as the evident miscalculation standard for court modification in section 11 of the FAA, and in section 3–223 of the

---

12. The arrearage calculated in the June 27 Award included Paragraph 2 payments for the entire months of January and February 2001. As explained, Mandl's last Paragraph 2 payment was made on December 3, 2000. The parties' Agreement stated, however, that the first quarterly Paragraph 2 payment would be due and payable 45 days after the execution of the Agreement, which was January 17, 1997. There was never a dispute (and the June 27 Award in fact reflects) that Paragraph 2 payments were to be made at the beginning of a quarter. Mandl's position in the motion to modify was that the beginning of the quarter for the first Paragraph 2 payment was March 3, 1997—45 days after January 17—and that the payments continued quarterly thereafter; computing the arrearage to cover all of January and February 2001 (and the first two days of March) thus imposed a double recovery—by ordering him to pay two months of Paragraph 2 payments he already had paid.

MUAA. Indeed, the R–48 standard does not call for the computational error to be evident on the face of the award. Even so, it had to have been obvious to the parties, on the face of the June 27 Award, that that part of it imposing an arrearage of $62,500 for January through March 31, 2004, was miscalculated because it tracked an "Alimony Year" beginning January 1, 1997, when the "Alimony Year" prescribed by the Agreement could not have started before January 17, 1997, the day the Agreement was signed.[13]

Moreover, the undisputed facts established that, by agreement reached on August 2, and memorialized in the August 6 Award, the parties submitted the time of commencement issue

---

13. There is no merit to Bailey's argument that, under *School City of East Chicago, Indiana v. East Chicago Fed'n of Teachers, Local Number 511, A.F.T.,* 622 N.E.2d 166 (Ind.1993), Mandl's motion was not a proper Rule 48 motion to modify. In that case, the Supreme Court of Indiana held that a trial court properly had refused to modify an arbitration award in a salary dispute between a school teachers' union and a city school. The arbitration ensued after the school authority calculated a contracted for salary increase for the teachers for 1988 and 1989 by using a 39–week year from which to derive the weekly wage. Challenging that decision, the union asserted that the contract called for the weekly wage to be derived from a 38–week year. The dispute was resolved by an arbitrator in favor of the union. The school authority then attempted to have the award modified on the ground that the arbitrator had made an evident miscalculation in using the 38–week year to derive the weekly salary. The appellate court held that the calculation by the arbitrator was a resolution of the parties' essential contractual dispute, not a miscalculation of an award, and hence was not subject to modification.

Unlike in *School City of East Chicago*, where the calculation challenged in the motion to modify merely was a restatement of the parties' contractual dispute, in this case, the challenge to the calculation of the arrearage for double recovery did not concern the essence of the parties' dispute. For four years, Mandl made the Paragraph 2 payments quarterly, on a March 3, June 3, September 3, and December 3 schedule, without any dispute between the parties that the payments should have been made on a quarterly basis beginning on January 17 instead of March 3. No such dispute was submitted to arbitration. Rather, the disputes that arose and were submitted to arbitration concerned whether Mandl was entitled to a reduction in the payment amounts, and whether Bailey was entitled to an arrearage. The time of commencement issue arose tangentially. Again, in the *School City of East Chicago* case, the entire dispute was over the calculation method in the parties' contract.

to the Arbitrator for decision, setting forth an evidence-gathering discovery period and briefing schedule for the issue and authorizing the Arbitrator to decide the issue thereafter. Thus, as of August 6, even if the Arbitrator did *not* have authority to decide the time of commencement issue as a motion to modify—which he did—he was newly authorized by the parties to decide the time of commencement issue, and to accept the evidence they obtained from prior counsel on that issue. *See* R–1 (allowing the parties to modify the procedures set forth in the AAA rules); *see also Magness Petroleum Co. v. Warren Resources, Inc.,* 103 Cal.App.4th 901, 127 Cal. Reptr.2d 159, 166 n. 7 (2002) (noting that because arbitration arises from contract, parties are free to expand their agreement and enlarge the powers of the arbitrator by express agreement or conduct). Moreover, in the August 6 Award, the Arbitrator *reconfirmed the June 27 Award in all other respects.* Accordingly, as of August 6, the Arbitrator was authorized, either by the AAA Rules, or by the parties' new submission, to decide the proper calculation of the arrearage, based on either a January 17 or March 3 "Alimony Year." All other claims remained decided, and the Arbitrator had no authority to re-decide them.

As explained above, R–38 governs the reopening of an arbitration hearing. It states that, on the arbitrator's initiative or application of a party, the hearing may be reopened "at any time before the award is made." The plain meaning of that rule is that, when a hearing has taken place and has been declared closed, and an award has been made, the arbitrator does not have authority to reopen the hearing. The rule does not draw any distinction in that regard between a final award that is made after a hearing and an award made after a hearing that is interim, interlocutory, or partial. The MUAA also does not afford any opportunity for parties to an arbitration to reopen an arbitration hearing.

Here, the request by Bailey to reopen the hearing for the Arbitrator to take evidence about Mandl's relationship with Gemplus was made not only after the June 27 Award was issued but also after issuance of the August 6 Award, confirm-

ing the June 27 Award in every respect except as to the time of commencement issue, which was to be decided based on a new agreement of the parties. The request to reopen the hearing was not made before an award was made, and therefore R–38 did not apply. There was no other procedural authority that would permit the Arbitrator to reopen the hearing. In addition, under the *functus officio* principle, an arbitrator's authority to decide an already-decided issue is not revived by newly discovered evidence. *See McClatchy Newspapers, supra,* 686 F.2d at 733 (holding that, "[e]ven assuming the availability of new evidence, it would not be appropriate for the arbitrator to consider such evidence and then redetermine the issues originally submitted to him").

The Arbitrator's decision that the AAA Rules did not permit him to reopen the hearing to take new evidence on which to re-decide the issue of material change in circumstances thus was not irrational or implausible. Indeed, the decision was legally sound. The Arbitrator cannot, therefore, be found to have refused to hear evidence pertinent to the parties' controversy. Plainly, an arbitrator who does not have the power to reopen a hearing and does not have the authority to redetermine an already-decided claim cannot be said to have refused to hear evidence material to the parties' controversy, under CJ section 3–224. *See McClatchy Newspapers, supra,* 686 F.2d at 733; *LaVale, supra,* 378 F.2d at 572; *Brzowski, supra,* 114 Md.App. at 636, 691 A.2d 699.

The Arbitrator's decision not to reopen the hearing to take evidence, as requested by Bailey, was not an error of law, and therefore could not have been an irrational legal error. The circuit court was legally incorrect in ruling that the Arbitrator refused to hear evidence material to the parties' controversy, and in granting summary judgment in Bailey's favor on that issue. As a matter of law, on the undisputed facts, the Arbitrator's denial of Bailey's motion to reopen the hearing was not a refusal to hear evidence material to the parties' controversy. The material change in circumstances claim was decided in the June 27 Award and could not be re-decided thereafter.

Because the circuit court incorrectly granted summary judgment on count II of the petition, its decision to dismiss counts I and III for mootness likewise was incorrect. The court should have granted Mandl's motion to dismiss count II, however, because it was in fact a motion for summary judgment, based as it was on facts outside the record, that was the mirror image of Bailey's motion for summary judgment on count II. Md. Rule 2–322(c); *Vogel v. Touhey,* 151 Md.App. 682, 703–04, 828 A.2d 268 (2003); *Hrehorovich v. Harbor Hosp. Center, Inc.,* 93 Md.App. 772, 782, 614 A.2d 1021 (1992). For the reasons we have explained, the facts material to count II are not in genuine dispute and on those facts the Arbitrator did not refuse to reopen evidence material to the parties' controversy, as a matter of law. On remand, the circuit court must enter summary judgment in favor of Mandl on count II. Md. rule 8–131(a); *Orkin v. Holy Cross Hosp. of Silver Spring, Inc.,* 318 Md. 429, 435, 569 A.2d 207 (1990); *Middlebrook Tech, LLC v. Moore,* 157 Md.App. 40, 58, 849 A.2d 63 (2004).

 Although the circuit court should not have dismissed count III for mootness, it should have dismissed that count nevertheless because, on the facts alleged in the petition and for the reasons we have explained above, the Arbitrator had authority to decide Mandl's challenge to the arrearage computation (i.e., the time of commencement issue), in the motion to modify, and as that issue was further submitted by the parties by the August 6 Award. As a matter of law, the Arbitrator did not exceed his authority when, in the October 7 Award, he modified the arrearage to correct a calculation error.

## II.

 Bailey's petition to vacate was filed on November 6, 2002. Mandl moved to dismiss the petition on the ground that it was not timely filed, under CJ section 3–224(a).[14] That subsection provides:

---

14. Mandl included other arguments in his motion to dismiss. He has not pursued them on appeal, however.

*Petition.*—(1) Except as provided in paragraph (2), a petition to vacate the award shall be filed within 30 days after delivery of a copy of the award to the petitioner.

(2) If a petition alleges corruption, fraud, or other undue means it shall be filed within 30 days after the grounds become known or should have become known to the petitioner.

On appeal, Mandl contends, on alternative grounds, that count I, alleging that the award was procured by fraud, should have been dismissed as not timely filed. We shall address each contention separately.

Mandl maintains that, under CJ section 3–224(a)(1), Bailey had 30 days after delivery of the June 27 Award to file her petition to vacate; because she did not meet that deadline, the court was required to dismiss count I.[15] In essence, Mandl's position is that even though, once the motion to modify was filed, the June 27 Award was not final on the arrearage claim and was not complete, the 30–day deadline to file a petition to vacate the Arbitrator's final decision on the material change in circumstances claim remained. As Mandl puts it, his filing of the motion to modify did not toll the running of the 30–day limitations period under CJ section 3–224(a)(1).

We see no merit in this argument.

As discussed above, an arbitration award is *final and complete* for purposes of court review when all the issues submitted to arbitration have been resolved definitively enough that the rights and obligations of the parties, with respect to those issues, "do not stand in need of further adjudication." *Rocket Jewelry Box, supra,* 157 F.3d at 176.

In this case, even though the June 27 Award was final and complete when issued, it was no longer final and complete once Mandl filed his motion to modify, because the Arbitrator

---

15. This argument actually applies to all of the counts of Bailey's petition. Mandl has raised it only as to count I, however. Moreover, because of our disposition of counts II and III above, leaving only count I for adjudication, the limitations issue is pertinent only to count I.

needed to decide the merits *vel non* of the motion to modify the arrearage computation, and, if there was merit to the motion, recompute a correct arrearage amount. Thus, until the Arbitrator made the October 7 Award, the June 27 Award, as reconfirmed on August 6, was not final as to the arrearage calculation and was not complete, because it left one issue undecided.

Under the circumstances, because once the motion to modify was filed, the Award was not complete, the 30–day period for filing a petition to vacate did not commence with respect to the already-decided material change in circumstances claim or any other aspect of the June 27 Award.

*Marousek v. Sapra*, 87 Md.App. 205, 589 A.2d 529 (1991), is of guidance. In that Health Claims Arbitration Office ("HCAO") case, we held that, when an award was entered against the claimant, but the claimant filed a timely motion to modify, under CJ section 3–222, the HCAO retained jurisdiction over the case to decide the motion. As a consequence, a circuit court action to nullify the award, under CJ section 3–2A–06, filed by the healthcare provider after the award was entered but before it was ruled upon, was premature and ineffective.

Our reasoning was by analogy to the purpose underlying the staying effect of a Rule 2–534 or 2–535 post trial motion; when such a motion is timely filed, "the trial court retains jurisdiction to dispose of it, notwithstanding that an appeal may have been noted." *Id.* at 213, 589 A.2d 529. We explained that, although those rules do not govern arbitration, and judicial review of an arbitration award is a different process than an appeal from a circuit court's decision, the analogy between the proceedings was "dispositive of the jurisdictional issue" because of their shared purpose: "to ensure that the original tribunal's actions are subject to review." *Id.* at 214, 589 A.2d 529. "In that regard, it is significant that review can occur only after the initial tribunal has completed its work. In other words, there can be no review until all of

the actions required of the first tribunal have been taken."
*Id.* at 214–15, 589 A.2d 529.

Of course, unlike in *Marousek,* the case at bar does not
present a question of jurisdiction between a statutorily estab-
lished arbitration tribunal and a court. The reasoning in
*Marousek* translates nevertheless because it is compatible
with the *functus officio* doctrine. An arbitrator's duty is to
fully perform the tasks submitted; he may not re-perform an
already performed task—and he must perform all work that is
to be done. When a motion to modify is pending, under R–48,
the arbitrator's work is not yet done.

Courts in other jurisdictions that have enacted some version
of the Uniform Arbitration Act have addressed the question of
whether the filing of a timely motion to modify with an
arbitrator (under what in Maryland is CJ section 3–222) tolls
the running of the period for filing a petition to vacate the
award (under what in Maryland is CJ section 3–224). The
better reasoned of those cases have held that a timely motion
to modify indeed has such a tolling effect, because a contrary
interpretation of the Uniform Arbitration Act provisions would
defeat the objective of arbitration: expeditious private dispute
resolution.

In *Konicki v. Oak Brook Racquet Club, Inc.,* 110 Ill.App.3d
217, 65 Ill.Dec. 819, 441 N.E.2d 1333 (1982), the appellate
court analyzed the question by focusing on the Illinois Uni-
form Arbitration Act provision, similar to CJ section 3–222(e),
that allows a party to petition a court to vacate an award as
*modified* by the arbitrator. The model for that provision is
section 9 of the Uniform Arbitration Act. The appellate court
explained that, if the deadline for filing a petition to vacate is
not tolled by the timely filing of a motion to modify, but the
court can review both the original award and the award as
eventually modified, then in every case in which modification
is timely applied for, the matter will have to proceed both in
arbitration and in court at overlapping times, with the arbitra-
tor and court deciding overlapping issues, a result that under-
mines the purpose of arbitration:

It would appear that section 9 [of the Uniform Arbitration Act] provides for review of a modified award in the same manner as an original award and the last sentence of section 9 unambiguously states that a modified or corrected award is subject to [confirmation, vacation, or modification] just as if no section 9 application had been made. We conclude that a party has 90 days from delivery of a modified award in which to petition the circuit court for its review.[16]

Any other interpretation would lead to anomalous and unjust results. For example, the UAA places no time restriction upon the arbitrator's disposition of an application under section 9. Thus, if the time for review is not tolled, a party would effectively lose his statutory right of judicial review if the arbitrators failed to resolve the application within the 90-day period. In order to preserve his right of review a party would then be forced, perhaps needlessly, to apply to the court during the pendency of the section 9 application and before the arbitrator has made a final award. Since the grounds for a section 9 application are included within [the section governing a court action to vacate], the courts would be asked in many cases to simultaneously decide issues still pending before the arbitrator. We do not think such duplicative and inexpeditious use of the judicial and arbitration system was contemplated by the enactment of section 9.

110 Ill.App.3d at 221–22, 65 Ill.Dec. 819, 441 N.E.2d 1333. *See also Swan v. American Family Mut. Ins. Co.*, 8 P.3d 546, 548 (Colo.App.2000) (adopting the reasoning of the court in *Konicki*); *Warner–Chappell Music, Inc. v. Aberbach de Mexico, S.A.*, 224 A.D.2d 301, 638 N.Y.S.2d 35 (1996) (same). *Cf. Teleometrics International, Inc. v. Hall*, 922 S.W.2d 189, 192 (Tex.App.1995) (holding that a motion to clarify that was *untimely filed* with the arbitrator did not toll period for filing petition to vacate).

---

**16.** Under the Illinois Uniform Arbitration Act, the time period for filing a petition to vacate is 90 days, not 30 days.

*Groves v. Groves,* 704 N.E.2d 1072 (Ind.App.1999), is the only case in which an appellate court has directly addressed the issue and reached a contrary conclusion. The court in *Groves* reasoned that it was acceptable for parallel proceedings to take place in the arbitration forum and the judicial forum. This reasoning was later expressly rejected by the court in *Swan,* which explained that it runs contrary to the objectives of arbitration: "[I]t ... would not promote judicial economy to require filing petitions [to vacate] with the court when the issues may be resolved by the arbitration [upon motion to modify]. If parallel petitions are filed, it could lead to the anomalous result of the arbitrators modifying an award at the same time the court is vacating it." 8 P.3d at 548.

We agree with the reasoning employed by the courts in *Konicki, Swan,* and *Warner Chappell Music,* and hold that a timely filed motion to modify an arbitral award tolls the 30 day time period for filing a petition to vacate under CJ section 3–224(a). Once the arbitrator has ruled on the motion, the final arbitration award, as modified (or as confirmed if the motion has been denied) is then subject to challenge by a petition to vacate. In the case at bar, then, the 30–day period for Bailey to file a petition to vacate commenced upon delivery of the October 7 Award. Her petition was filed within 30 days of that time, and hence was timely under CJ section 3–224(a).

Mandl's second, alternative contention is that, because Bailey was seeking to vacate the decision on the material change in circumstances claim as made in the June 27 Award, on the ground that it was procured by fraud, she had to file her petition within 30 days after that ground became known to her, under CJ section 3–224(a)(2). The ground must have become known to her, he argues, no later than August 31, 2002, when her lawyer wrote to the Arbitrator accusing Mandl of fraud; and the petition was not filed within 30 days of that date. Therefore, count I was untimely and should have been dismissed.

The statutory interpretation Mandl urges in this argument is illogical in light of the tolling effect of a timely filed motion

to modify. As we have explained, when a motion to modify an arbitration award is timely filed, the general 30–day period for filing a petition to vacate is tolled until the arbitrator issues and delivers an award that decides the motion and therefore is final and complete. CJ section 3–224(a)(2) provides an exception to the general 30–day filing period when the award is challenged on the basis of fraud, corruption, or other undue means, and the challenger did not know or reasonably should not have known that that ground existed until after the expiration of the 30–day filing deadline period. This part of the statute is a separate tolling provision, similar to CJ section 5–203, that ensures that a challenger will not lose by the expiration of the 30–day general filing deadline the right to attack an arbitral award based on fraud, corruption, or other undue means when the conduct was not known, and should not have been known, to him. Its purpose is not to shorten the 30–day deadline for filing a petition to vacate when fraud is a basis for the challenge, but to extend that deadline when the fraud was not known and should not have been known to the challenger within the general 30–day deadline period.

In this case, under the general 30–day filing period set forth in CJ section 3–224(a)(1), Bailey was required to file a petition to vacate within 30 days of delivery of the October 7 Award to her. That 30–day period was not shortened by her learning, on August 31, that there possibly had been fraud on Mandl's part in obtaining a favorable decision on the material change in circumstances claim. (Indeed, on September 30—the filing deadline according to Mandl—there still was not a final and complete arbitration award.)

The circuit court properly denied Mandl's motion to dismiss count I of the petition to vacate.

## CONCLUSION

The circuit court's ruling that, as a matter of law, the Arbitrator refused to hear evidence material to the parties' controversy (count II), was legally incorrect. To the contrary, as a matter of law, the Arbitrator properly refused to reopen

the arbitration hearing to hear further evidence as requested by Bailey because he did not have the authority to do so. The circuit court has no discretion to find otherwise. Therefore, summary judgment is vacated on count II of the petition, and the case is remanded with instructions to enter summary judgment in favor of Mandl on that count.

The circuit court dismissed count I (fraud) for mootness, based on its ruling on the summary judgment motion on count II. This ruling also was legally incorrect. The case is therefore remanded to the circuit court for further proceedings on Bailey's petition to vacate the October 7 Award (which includes the surviving portions of the June 27 Award) on the basis that it was procured by fraud. Specifically, Bailey can proceed in circuit court on her challenge that Mandl procured a victory on the material change in circumstances claim by fraud.

The circuit court's dismissal of count III (exceeding authority in modifying the arrearage) was made on a legally incorrect basis—again, mootness; but the court erred in denying Mandl's motion to dismiss this count. As we have explained, as a matter of law, the Arbitrator had authority to modify the arrearage award as first made on June 27. Accordingly, we shall affirm the dismissal of count III.

**JUDGMENT IN FAVOR OF THE APPELLANT ON COUNT I REVERSED AND CASE REMANDED TO THE CIRCUIT COURT FOR MONTGOMERY COUNTY FOR FURTHER PROCEEDINGS ON THAT COUNT. JUDGMENT IN FAVOR OF THE APPELLEE ON COUNT II REVERSED AND CASE REMANDED WITH INSTRUCTIONS TO ENTER JUDGMENT IN FAVOR OF THE APPELLANT ON THAT COUNT; JUDGMENT IN FAVOR OF THE APPELLANT ON COUNT III AFFIRMED.**

**COSTS TO BE PAID ONE–HALF BY THE APPELLANT AND ONE–HALF BY THE APPELLEE.**